FILED
2010 MAY 20 PM 1:49
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| PAUL BASHKIN, | CASE NO. 08cv1450-WQH-WVG |
|---|---|
| Plaintiff, | **ORDER** |
| vs. | |
| SAN DIEGO COUNTY; HOWARD KLUGE, individually and in his official capacity; BRET GARRETT, individually and in his official capacity; and DOES 1 through 100, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendants San Diego County, Howard Kluge and Bret Garrett. (Doc. # 39).

**I.     Background**

On August 8, 2006, an employee of Barona Casino & Resort ("Barona") placed a call to the San Diego County Sheriff's Department ("Sheriff's Department"), requesting an investigation of Plaintiff Paul Bashkin pursuant to section 5150 of the California Welfare and Institutions Code.[1] (Denny Decl., Doc. # 39-3 at 1–2; Kluge Dep., Doc # 39-3 at 112–13).

According to Plaintiff:

> I was distraught over losing all of my money gambling at Barona and not being able to afford to pay for my food and rent. As a result, I asked to speak to Barona's management, informed them I wanted to be 'self-banned,' and said something to the effect that if I was evicted and forced onto the street, I might commit suicide. Barona's representatives assured me that they would help me

---

[1] Section 5150 allows a peace officer to take a person into custody and place him in a facility for 72-hour treatment and evaluation when the person, "as a result of mental disorder, is a danger to others, or to himself ..., or gravely disabled." CAL. WELF. & INST. CODE § 5150 (1998).

- 1 -

08cv1450-WQH-WVG

> out financially since I was one of their most valued Club Barona Diamond Club members. In reality, however, I overheard them contact the Sheriff's Department to have me committed to the county psychiatric facility for a 72-hour mental health hold. After awhile, Deputy Kluge and the training deputy sheriff, Bret Garrett, arrived at Barona's security room where I had been taken.

(Suppl. Decl. of Paul Bashkin, Doc. # 51-1, Ex. 5 at IA07).

Plaintiff states:

> [A]fter evaluating and investigating me in a holding room at Barona Casino, sheriff's deputy Howard Kluge determined not to arrest me or have me committed on a § 5150 charge because I was not a danger to myself or others. He told me that I was 'free to go.' I was not arrested or charged with any crime. However, Kluge physically stopped me from leaving. During my discussions with the Barona security officer ... regarding my decision not to 'self-ban' in order to preserve my Club Barona player's club rights, Kluge began verbally harassing and shouting at me.... Among others, he informed me that: Barona did not have to explain itself; I had 'no rights'; and that Barona could do 'whatever it wanted' to me. ...
>
> After I stated that I was going to go for a free dinner buffet (which I had earned as a Club Barona member), Kluge would not let me leave the holding room or partake of the free buffet, effectively holding me prisoner there. As I was attempting to leave the holding room, Kluge grabbed me and forcibly pinned my wrists behind my back, which was excruciatingly painful and left bruises. Kluge then forcibly maneuvered me, still with my wrists pinned, from the holding room through the parking lot to Kluge's patrol car. En route, I asked him to let go of my wrists because he was hurting me. Deputy Kluge refused, telling me to 'shut up.' ...
>
> When we arrived at Deputy Kluge's patrol car, in response to his questioning, I advised him that I had a claim check to retrieve my backpack in my right front pocket. Deputy Kluge would not let me get it. Instead, he handcuffed me, which was also very painful and done over my protestations, while Kluge searched each of my pockets without my consent. ...
>
> When Kluge found my wallet in my back pocket, he began rummaging through it, commenting on its contents. Eventually, after going through all of my other pockets, Kluge pulled the claim check out of my right front pocket and ordered me to walk around to the casino entrance where the buses departed, informing me that my backpack would be waiting for me when I got there. ...
>
> I did not display agitated and aggressive behavior. I was non-confrontational and obedient (albeit scared to death), even when I was attempting to enforce my rights.

(Decl. of Paul Bashkin, Doc. # 46-1, ¶¶ 14–17, 20 (quotation omitted)).

After Plaintiff declined to sign a "'self-ban' letter," and while Plaintiff was in the Barona security office with Kluge and Barona security manager George Denny, Denny gave Plaintiff "an involuntary 'forcible-ban' letter." (Suppl. Decl. of Paul Bashkin, Doc. # 51-1, at 5; *see also id.*, Ex. 5 at IA07; Kluge Dep., Doc. # 39-3, at 170). After Kluge escorted

| | |
|---|---|
| 1 | Plaintiff to the parking lot, Kluge informed Plaintiff that he could either leave on the bus, or |
| 2 | be placed under "formal arrest, and ... be released at the Santee station with a citation." (Kluge |
| 3 | Dep., Doc. # 39-3, at 199–200). Plaintiff told Kluge that Plaintiff "had decided that he was |
| 4 | going to leave without being arrested." (*Id.* at 205). Kluge removed the handcuffs from |
| 5 | Plaintiff and Barona's security staff "escorted [Plaintiff] over to the bus." (*Id.*) Barona's |
| 6 | security staff "brought [Plaintiff]'s backpack," and Plaintiff departed on the bus. (*Id.*) |
| 7 | On August 8, 2008, Plaintiff, proceeding pro se, filed an unverified Complaint against |
| 8 | San Diego County, Kluge and Garrett. (Doc. # 1). The Complaint alleges two causes of |
| 9 | action: (1) deprivation of rights pursuant to 42 U.S.C. § 1983 against all Defendants; and (2) |
| 10 | conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 against Kluge and |
| 11 | Garrett. (*Id.* at 2, 5). Plaintiff's first cause of action, labeled "deprivation of rights," alleges: |

> Deputy Kluge's actions and Deputy Garrett's inaction ... violated Plaintiff's 4th Amendment rights by, among others: (a) subjecting Plaintiff to an unlawful and unreasonable search and seizure without probable cause; and (b) using excessive force and unlawful restraint against Plaintiff absent probable cause. ... Deputies Kluge and Garrett also violated Plaintiff's 14th Amendment rights by depriving Plaintiff of liberty without due process when Deputy Kluge unlawfully restrained Plaintiff. ...
>
> Defendant San Diego County either maintained a policy that allowed its sheriff's deputies ... to engage in the lawlessness set forth above, or acted recklessly, intentionally or with gross negligence in failing to adequately train its sheriff's deputies.... The Internal Affairs Unit of the San Diego County Sheriff's Department conducted an internal investigation and determined that 'no violations of Sheriff's Department policies and procedures were found.' Thus, it is the policy, custom or practice of the San Diego County Sheriff's Department to act with deliberate indifference toward the 4th and 14th Amendment rights of United States citizens and, more specifically, individuals investigated on a § 5150 charge, by: (a) allowing its deputies to unreasonably search and seize them, use excessive force against them and deprive them of their liberty without due process; and (b) not requiring its deputies to document or file incident reports concerning § 5150 investigations or detentions.

(*Id.* ¶¶ 16–19). Plaintiff's second cause of action, labeled "conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985," alleges:

> Barona employees ... entered into an into an agreement or understanding with Deputy Kluge to have him terrorize Plaintiff and forcibly remove Plaintiff from the premises in order to coerce Plaintiff to give up his player's club rights and to make it appear as if he had engaged in such unidentified misconduct in order to warrant his removal from the casino. ... Barona made audio and videotapes of this incident which corroborated all of Plaintiff's allegations.... Because of the incriminating and incendiary nature of the audio and videotapes, defendants Kluge and Garrett, through their agreement(s) with Barona, conspired to obstruct justice and have those tapes destroyed shortly after the incident.

(*Id.* ¶¶ 28–30). The Complaint seeks "general damages," "special damages," punitive damages and attorney's fees. (*Id.* at 7).

## II. Motion for Summary Judgment

On January 4, 2010, Defendants filed the Motion for Summary Judgment. (Doc. # 39). Defendants contend that Plaintiff's detention was reasonable because:

> [I]t is undisputed that Defendant deputies received a complaint from Barona Casino regarding suicide threats made by Plaintiff and that their contact with him was limited to asking questions to determine if he was likely to harm himself and then handcuffing him when he refused to leave the premises after a demand that he leave. The brief detention was reasonable under the circumstances presented to the deputies and ended when Plaintiff voluntarily left.

(Doc. # 39-1 at 4). Defendants contend that the handcuffing did not constitute excessive force under the Fourth Amendment because: "The handcuffing of Plaintiff was justifiable under the circumstances and no force was used. Plaintiff cannot provide any significant probative evidence to support his excessive-force claim based on painful handcuffing." (*Id.* at 5 (quotation omitted)). Defendants contend:

> Plaintiff alleges that Deputy Kluge searched his pockets for a claim check needed to retrieve Plaintiff's backpack. Deputy Kluge denies that this took place. Even if this occurred as alleged, since Plaintiff was handcuffed because of his hostile demeanor and because he was being escorted to the parking lot potentially to be arrested for trespass, Plaintiff could not have gotten the claim check by himself. While Plaintiff now characterizes this as an 'unlawful search,' the ultimate result was that his claim check was located so that his backpack could be returned to him before he left on the bus. There is no constitutional implication here.

(*Id.* at 6). Defendants additionally contend that Kluge and Garrett are entitled to qualified immunity from Plaintiff's claims. Defendants contend that summary judgment is appropriate as to Plaintiff's second cause of action for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985. Defendants finally contend that "[s]ince the County cannot be liable without an underlying constitutional violation, the motion for summary judgment should be granted in favor of all Defendants." (*Id.* at 9).

On February 2, 2010, Plaintiff filed an opposition to the Motion for Summary Judgment. (Doc. # 46). Plaintiff contends that Defendants have failed to meet their burden of showing that there is no genuine issue of material fact. Plaintiff contends that Defendants "only address[] Bashkin's <u>Fourth</u> Amendment claims. ... Bashkin has also alleged facts

constituting a <u>denial of liberty</u> in violation of his constitutional rights to due process of law under the <u>Fourteenth</u> Amendment." (*Id.* at 5). Plaintiff objects to much of Defendants' evidence as being "forged-falsified," "perjured," "lack[ing] foundation," and/or "improperly authenticated." (*Id.* at 3). Due to the "forged-falsified" and "perjured" evidence, Plaintiff "requests that this Court either hold defendants[,] their counsel ... and 'star witness,' George Denny, in contempt or issue an order to show cause why they should not be held in contempt." (*Id.* at 14). Plaintiff contends: "[G]iven that defendants' evidence was inadmissible, perjured and falsified, the Court should grant summary adjudication to Bashkin on each of his damages claims and allow him to proceed on a default-judgment-type situation, requiring only a 'prove-up' of his damages." (*Id.*)

On February 9, 2010, Defendants filed a reply in support of the Motion for Summary Judgment. (Doc. # 47). Defendants attached new evidence to the reply.

On February 16, 2010, the Court issued an Order allowing Plaintiff to file a response to the new evidence submitted in Defendants' reply. (Doc. # 50).

On March 4, 2010, Plaintiff filed a brief and additional evidence in response to Defendants' reply. (Doc. # 51).

### III. Standard of Review

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *See id.* at 248. The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must

"identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *Liston v. County of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) ("For the purposes of summary judgment, ... we must assume the nonmoving party's version of the facts to be correct.") (citation omitted).

## IV. Discussion

### A. First Cause of Action: Section 1983 Claims

#### 1. Claims Against Kluge and Garrett

The Complaint's first cause of action, "deprivation of rights" pursuant to 42 U.S.C. § 1983, alleges that Kluge and Garrett "violated Plaintiff's 4th Amendment rights" by: (1) "unlawfully restraining" Plaintiff and subjecting Plaintiff to "an unlawful and unreasonable ... seizure [of Plaintiff's person] without probable cause" by detaining Plaintiff in the Barona security room and escorting him to the parking lot ("unlawful detention");[2] (2) "using excessive force" against Plaintiff by "pinning Plaintiff's wrists behind his back" as Kluge escorted Plaintiff to the parking lot and handcuffed Plaintiff in the parking lot ("excessive force"); and (3) subjecting Plaintiff to "an unlawful and unreasonable search and seizure [of property] without probable cause" by searching Plaintiff's pockets without his consent in the Barona parking lot ("unlawful search"). (Doc. # 1 at 3–4). Defendants move for summary judgment as to each of these three claims.

##### a. Unlawful Detention

Stops under the Fourth Amendment fall into three categories:

---

[2] The Complaint's first cause of action alleges "Deputies Kluge and Garrett also violated Plaintiff's 14th Amendment rights by depriving Plaintiff of liberty without due process when Deputy Kluge unlawfully restrained Plaintiff." (Doc. # 1 ¶ 17). All claims of excessive force and/or "unreasonable seizures of citizens" are analyzed under Fourth Amendment standards, rather than general due process standards of the Fourteenth Amendment. *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). "Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him." Accordingly, Plaintiff's claim of "unlawful[] restrain[t]" is analyzed under Fourth Amendment standards. (Doc. # 1 ¶ 17).

> First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, 'consensual' exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may 'seize' citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by 'reasonable suspicion.' Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause.

*Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (citations omitted). "A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a 'fair probability' that the suspect has committed a crime." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (citations omitted). "An officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty. If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A police officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")).

The relevant time period of the alleged unlawful detention is between the time when "Kluge decided not to have Plaintiff involuntarily committed on a § 5150 hold" and when Plaintiff boarded the bus to depart Barona. (Doc. # 1 ¶ 8 ("After questioning Plaintiff, Deputy Kluge decided not to have Plaintiff involuntarily committed on a § 5150 hold. Plaintiff was not arrested and was informed that he was free to go. All violations hereinafter alleged occurred subsequent to these decisions.")). It is undisputed that Kluge witnessed Barona's security manager give Plaintiff "an involuntary 'forcible-ban' letter." (Suppl. Decl. of Paul Bashkin, Doc. # 51-1, at 5; *see also* Kluge Dep., Doc. # 39-3, at 170). It is also undisputed that, rather than immediately leave Barona, Plaintiff "attempted to leave the holding room to attend the Barona Dinner Buffet for free." (Decl. of Paul Bashkin, Doc. # 46-1, ¶ 8; *see also id.* ¶ 15 ("After I stated that I was going to go for a free dinner buffet (which I had earned as a Club Barona member), Kluge would not let me leave the holding room or partake of the free

buffet, effectively holding me prisoner there. As I was attempting to leave the holding room, Kluge grabbed me and forcibly pinned my wrists behind my back.... Kluge then forcibly maneuvered me, still with my wrists pinned, from the holding room through the parking lot to Kluge's patrol car.")).

Kluge testified that he considered Plaintiff to be in violation of California Penal Code § 602. (Kluge Dep., Doc. # 39-3, at 170–71, 174). Section 602 makes the following a misdemeanor trespass:

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession.

Cal. Penal Code § 602(o); *see also id.* § 602.1(a).[3] Although Barona may be generally open to the public, the "involuntary 'forcible-ban' letter" (Suppl. Decl. of Paul Bashkin, Doc. # 51-1, at 5) "arguably rendered [Barona] 'not open to the public' with respect to [Plaintiff]." *Blankenhorn v. City of Orange*, 485 F.3d 463, 474 (9th Cir. 2007) ("While a shopping center, under California law, is generally 'open to the public,' the Notice Forbidding Trespass arguably rendered The Block 'not open to the public' with respect to [plaintiff].") (citing *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) (discussing a similar requirement in an Oregon trespassing statute and recognizing that "premises are not considered 'open to the

---

[3] Section 602.1(a) provides:
> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor....

Cal. Penal Code § 602.1(a).
"It doesn't matter for present purposes if [a § 1983 plaintiff] was charged with a different crime than that for which he was arrested." *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007). "[P]robable cause may exist for an arrest for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003) (quotation omitted). "As long as the officers had some reasonable basis to believe [the § 1983 plaintiff] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances." *Id.* at 952 (quotation omitted).

public' with regard to a particular individual when that person previously has been barred from the property")). In *Blankenhorn*, the Ninth Circuit held that police officers had probable cause to arrest the plaintiff for trespassing under California law, where the officers reasonably believed that plaintiff had previously been banned from a mall, and mall security requested that he be arrested for trespassing. *See id.* at 474-75. The court stated that, while "actually convicting under section 602(n) might have been difficult,"[4] "[u]ltimately, ... our inquiry is not whether Blankenhorn was trespassing. Rather, it is whether a reasonable officer had probable cause to think he could have been. ... [G]iven (1) the prior 'Notice Forbidding Trespass' and other facts known to the officers, and (2) The Block security's request that police place Blankenhorn under arrest, it was reasonable for officers to believe they had probable cause to arrest Blankenhorn for trespassing." *Id.* at 475 (citations omitted).

Even viewing the evidence in the light most favorable to Plaintiff, a reasonable officer in Kluge's position would have had probable cause to arrest Plaintiff for trespass pursuant to California Penal Code section 602. *See id.* Because probable cause existed to arrest Plaintiff, Defendants have necessarily satisfied the "less demanding" standard of showing that Plaintiff's brief detention was supported by reasonable suspicion.[5] *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). Accordingly, the Court concludes that summary judgment is appropriate as to Plaintiff's claim that Kluge and Garrett unlawfully detained or seized Plaintiff.

Even if probable cause did not exist, or if there is an issue of fact as to whether probable cause existed, Kluge and Garrett are entitled to qualified immunity as to Plaintiff's unlawful detention claim. *See Blankenhorn*, 485 F.3d at 476 ("Even if a trespassing conviction ultimately might have been difficult, there was no clearly established law indicating that Blankenhorn could not have been trespassing under present circumstances. Accordingly, even if there were no probable cause (or there were a triable question of fact), the Defendants would

---

[4] Section 602(n) is now California Penal Code § 602(o). *See Blankenhorn*, 485 F.3d at 473.

[5] The parties dispute whether Plaintiff's detention must be supported by reasonable suspicion (Doc. # 39-1 at 3) or probable cause (Doc. # 46 at 5), but resolution of the issue of whether Plaintiff's detention was an investigatory stop or an arrest is not necessary.

still be entitled to qualified immunity."); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) ("[E]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the searching officers possessed.").

Defendants' Motion for Summary Judgment as to Plaintiff's unlawful detention claim is granted.

### b. Excessive Force

A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

Force used to effectuate handcuffing can constitute excessive force. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *Meredith v. Erath*, 342 F.3d 1057, 1061, 1063-64 (9th Cir. 2003); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995); *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). The issue of tight handcuffing and the reasonableness of force used to effectuate "handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960; *see Smith v. City of Hemet*, 394 F.3d 689, 700-01 (9th Cir. 2005) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, ... summary judgment ... in excessive force cases should be granted sparingly.") (quotation omitted). However, a plaintiff alleging an excessive force claim has the "burden of proof of providing specific facts to show that the force used was unreasonable or that [the plaintiff] sustained actual injuries," and "conclusory allegations unsupported by factual data are insufficient to defeat [a] summary judgment

motion." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). "In cases where the Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, plaintiffs either were demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers." *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1232-33 (N.D. Cal. 2005) (collecting cases).

> Plaintiff has submitted an affidavit which states:
>
> Kluge grabbed me and forcibly pinned my wrists behind my back, which was excruciatingly painful and left bruises. Kluge then forcibly maneuvered me, still with my wrists pinned, from the holding room through the parking lot to Kluge's patrol car. En route, I asked him to let go of my wrists because he was hurting me. Deputy Kluge refused, telling me to 'shut up.' ... [Kluge] handcuffed me, which was also very painful and done over my protestations, while Kluge searched each of my pockets without my consent. ... I did not display agitated and aggressive behavior. I was non-confrontational and obedient (albeit scared to death), even when I was attempting to enforce my rights.

(Decl. of Paul Bashkin, Doc. # 46-1, ¶¶ 15–16, 20 (quotation omitted)).

This evidence, if credited, is sufficient to warrant the denial of summary judgment–including Kluge's defense of qualified immunity–as to Plaintiff's excessive force claim against Kluge. *See Palmer*, 9 F.3d at 1436 ("[The police officer] has presented no evidence that would justify handcuffing [plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [plaintiff] complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional.") (affirming the denial of defendant's motion for summary judgment based on qualified immunity); *see also LaLonde*, 204 F.3d at 960 (reversing trial court's judgment as a matter of law for defendant officers when plaintiff produced evidence that "the officers tightly handcuffed him and refused to loosen the cuffs when he complained").

With respect to Garrett, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quotation omitted). Defendants have presented evidence that Garrett "observed a 5150 evaluation and Mr. Bashkin being escorted out of the casino where he elected to leave on a bus." (Garrett Resp. to Interrog. No. 21, Doc. # 47-3, at 7). Defendants have not presented evidence indicating that Garrett was not

present or was otherwise unable to intercede when Kluge allegedly used excessive force and ignored Plaintiff's complaints of pain. On summary judgment, Garrett bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Garrett is denied.

### c.    Unlawful Search

During the course of an investigatory stop, an officer may conduct a search "for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons." *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979). "Unless an officer can point to specific facts that demonstrate reasonable suspicion that the individual is armed and dangerous, the Fourth Amendment tolerates no frisk." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009). When *Terry* was decided in 1968, "it was clearly established that every pat-down is unreasonable unless it is supported by the officer's reasonable suspicion that the person to be frisked is armed and dangerous." *Id.* at 1023.

The Fourth Amendment allows an officer greater latitude to conduct a search and seizure "incident to arrest." *Knowles v. Iowa*, 525 U.S. 113, 116-17 (1998) (noting that the two historical rationales for the search incident to arrest exception are "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial"). However, the Ninth Circuit has "decline[d] to extend the doctrine of 'search incident to arrest' to give protection for a warrantless search or seizure when no arrest is made." *Menotti v. City of Seattle*, 409 F.3d 1113, 1153 (9th Cir. 2005). Accordingly, at least as of 2005, it was clearly established that, even where there is probable cause to arrest, a search and seizure "incident to arrest" made not be conducted when no formal arrest occurs. *Id.*

Plaintiff has presented the following evidence:

> When we arrived at Deputy Kluge's patrol car, in response to his questioning, I advised him that I had a claim check to retrieve my backpack in my right front pocket. Deputy Kluge would not let me get it. Instead, he handcuffed me, which was also very painful and done over my protestations, while Kluge searched each of my pockets without my consent. ...

> When Kluge found my wallet in my back pocket, he began rummaging through it, commenting on its contents. Eventually, after going through all of my other pockets, Kluge pulled the claim check out of my right front pocket and ordered me to walk around to the casino entrance where the buses departed, informing me that my backpack would be waiting for me when I got there. ...

(Decl. of Paul Bashkin, Doc. # 46-1, ¶¶ 16–17).

Viewing the evidence in the light most favorable to Plaintiff, although Kluge had probable cause to arrest Plaintiff for trespassing, Kluge did not arrest Plaintiff. (Kluge Dep., Doc. # 39-3, at 186, 199–200, 205). Defendants have presented no evidence that either Kluge or Garrett had a reasonable suspicion that Plaintiff was armed and dangerous. Defendants contend that this alleged search "was trivial in scope and manner and was done as a courtesy to Plaintiff." (Doc. # 39-1 at 6). However, Plaintiff's evidence, if credited, shows that Kluge's search was not consensual and more intrusive than simply looking for the claim check as a courtesy to Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, Defendant's Motion for Summary Judgment as to Plaintiff's unlawful search claim against Kluge must be denied.

As discussed above, Defendants have not presented evidence indicating that Garrett was not present or was otherwise unable to intercede when Kluge allegedly searched Plaintiff's pockets and "rummag[ed] through" Plaintiff's wallet. (Decl. of Paul Bashkin, Doc. # 46-1, ¶ 17). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's unlawful search claim against Garrett is denied.

### 2. Claims Against San Diego County

The Complaint alleges that "San Diego County either maintained a policy that allowed its sheriff's deputies ... to engage in the lawlessness set forth above, or acted recklessly, intentionally or with gross negligence in failing to adequately train its sheriff's deputies...." (Doc. # 1 ¶ 18). The sole reference to the County of San Diego in Defendants' Motion for Summary Judgment occurs in the last sentence of the moving brief: "Since the County cannot be liable without an underlying constitutional violation, the motion for summary judgment should be granted in favor of all Defendants." (Doc. # 39-1 at 9). To the extent the Court has denied summary judgment to Kluge and Garrett, and because Defendants have not moved for summary judgment as to the County on any other basis, the Motion for Summary Judgment as

to Plaintiff's claims against the City is denied.

B.    **Second Cause of Action: Section 1985 Claim**

Plaintiff's second cause of action is "conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985." (Doc. # 1 at 5). The Complaint does not identify under which subdivision of § 1985 Plaintiff's claim is alleged. Section 1985 has three subdivisions: (1) "preventing officer from performing duties," (2) "obstructing justice," and (3) "depriving persons of rights and privileges." 42 U.S.C. § 1985.

Section § 1985(1) affords protection only to federal officers and prospective federal officers. *See Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981). Plaintiff does not allege that he is, or ever was, a member of that protected class.

"Section 1985(2) contains two clauses that give rise to separate causes of action." *Portman v. County of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993). "[T]to make out a claim based on retaliation under the first clause of section 1985(2), a plaintiff must prove four elements: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff." *Id.* at 909 (citations omitted). Plaintiff has not alleged or provided evidence of a conspiracy by Defendants to injure him or his property because he attended federal court or testified in any matter pending in federal court at the time Plaintiff filed his Complaint. *See Lewis v. Bayh*, 229 Fed. Appx. 514, 515, 2007 WL 1202881, at *1 (9th Cir., April 24, 2007) ("The district court properly concluded [plaintiff] failed to state a claim under 42 U.S.C. § 1985(2), because [plaintiff] did not allege defendants' actions hampered him from presenting an effective case in any then-pending matter in federal court.").

To prove a violation under the second clause of section 1985(2) or section 1985(3), a plaintiff "must show 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Portman*, 995 F.2d at 909. Plaintiff has not alleged in the Complaint or produced evidence that any of the alleged conspirators were motivated by racial or other class-based "invidiously discriminatory

1 animus." *Orin*, 272 F.3d at 1217.

2 "[B]ecause [Plaintiff] failed 'to make a showing sufficient to establish the existence of
3 an element essential to' his claim," Defendants' Motion for Summary Judgment as to
4 Plaintiff's second cause of action is granted. *Id.* (quoting *Celotex*, 477 U.S. at 322).

5     **C.**    **Plaintiff's Request for Sanctions and Summary Adjudication**

6 Plaintiff contends that "evidentiary sanctions are warranted" against Defendants (Doc.
7 # 46 at 14), and "[t]he Court should summarily adjudicate each of the claims in Bashkin's
8 favor" (Doc. # 51 at 10). Plaintiff's request for sanctions and/or summary adjudication is
9 denied without prejudice to renew pursuant to a properly-filed motion which complies with the
10 applicable rules.

11     **D.**    **Evidentiary Objections**

12 All objections to evidentiary materials cited in this Order are overruled. All objections
13 to evidentiary materials not cited in this Order are denied as moot.

14 **V.**    **Conclusion**

15 IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is
16 **GRANTED IN PART** and **DENIED IN PART**. (Doc. # 39).

17 Defendants' Motion for Summary Judgment is **GRANTED** as to the following claims:
18 Plaintiff's unlawful detention claim, and Plaintiff's second cause of action, "conspiracy to
19 interfere with civil rights pursuant to 42 U.S.C. § 1985." Defendants' Motion for Summary
20 Judgment is **DENIED** as to the following claims: Plaintiff's excessive force claim, and
21 Plaintiff's unlawful search claim.

22 No later than **fourteen (14) days** from the date this Order is filed, the parties shall
23 contact the chambers of the Magistrate Judge to schedule a case management conference
24 regarding the status of discovery and to schedule a final pretrial conference date.

25 Dated: 5/20/10

26

27 WILLIAM Q. HAYES
UNITED STATES DISTRICT JUDGE

28