1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   PAUL BASHKIN,                    )  Civil No. 08-CV-1450-WQH(WVG)
                                      )
12                     Plaintiff,     )  ORDER ON PLAINTIFF'S EX PARTE
                                      )  STATEMENT REGARDING CONTINUING
13   v.                               )  DISCOVERY DISPUTES
                                      )
14   SAN DIEGO COUNTY, HOWARD KLUGE,  )  (DOC. NO. 80)
     BRET GARRETT, & DOES 1-100,      )
15                                    )
                       Defendants.    )
16   _____)

17        Before the Court is Plaintiff's *ex parte* statement (Doc. No.

18   80) on the status of continuing discovery disputes, as well as

19   Defendants' response (Doc. No. 82).  Having carefully considered all

20   of the discovery disputes presently before the Court, as well as the

21   disputes on which the Court reserved judgment in its November 3,

22   2010, Order (Doc. No. 77), the Court hereby rules on the disputes

23   and orders the parties to proceed consistently with this Order.

24                          I.  **BACKGROUND**

25        On October 12, 2010, The Honorable William Q. Hayes granted

26   Plaintiff's motion for leave to amend his Complaint.  Specifically,

27   Plaintiff was allowed to make additional allegations to cure a

28   pleading deficiency in his second cause of action ("Conspiracy to

1   Interfere with Civil Rights" pursuant to 42 U.S.C. § 1985).
2   Plaintiff filed his First Amended Complaint on October 22, 2010.
3   Defendants responded by Motion to Dismiss, which is currently
4   pending before Judge Hayes.

5        Over the course of the past year, the parties have been
6   embroiled in a series of continuing and increasingly contentious
7   discovery disputes.  On September 10, 2010, the Court convened yet
8   another discovery conference to address the state of discovery and
9   to resolve any continuing disputes.  Plaintiff, Paul Bashkin,
10  appeared on his own behalf, and James M. Chapin appeared on behalf
11  of the defendants, San Diego County, Howard Kluge, and Bret Garrett
12  (collectively, "Defendants").  Based on the parties' inability to
13  interact without the Court's oversight, the Court supervised the
14  parties as they met and conferred.  The Court then ordered the
15  parties to further meet and confer and submit a joint statement on
16  continuing and resolved disputes.  The parties' ensuing joint
17  statement (Doc. No. 74) indicated that Defendants agreed to provide
18  responses to sixteen (16) disputed topics, but indicated that
19  eighteen (18) disputed items remained.

20       On November 3, 2010, the undersigned issued an Order that
21  required Defendants to respond to the discovery requests to which
22  they had agreed to respond.  (Doc. No. 78.)  The Court reserved
23  judgment on the 18 remaining disputed items so that they could be
24  considered together with Plaintiff's objections, if any, to
25  Defendants' responses to the 16 undisputed items.  On December 10,
26  2010, Plaintiff filed an *ex parte* statement that contained his
27  objections to Defendants' supplemental responses.  (Doc. No. 78.)
28  Plaintiff apparently attempted to meet and confer with Defendants,

who did not respond.  Defendants filed their response to Plaintiff's
statement on December 16, 2010. (Doc. No. 82.)  Rather than address
the objections in Plaintiff's *ex parte* statement, Defendants tersely
stated that they have fully answered all interrogatories and no
additional information exists.  The Court now rules on all of the
continuing and reserved disputes.

## II.   RULINGS

**A.      Source of the Dispute:  The Parties' Inability to Cooperate**

The source of the parties' continuing dispute is two-fold.
First, Plaintiff over-analyzes Defendants' responses and continually
complains that Defendants' responses are evasive, incomplete, vague,
"obstreperous," and lack sufficient detail.  He seeks narrative
recitations of each and every possible detail and even narrative re-
creations of information that is contained in books and other
printed materials.  For their part, Defendants provide guarded
responses that are devoid of much detail, while simultaneously
protesting that Plaintiff seeks every possible minute detail.
Defendants then provide minimal additional details, but only when
ordered by the Court - and even then their responses remain vague
and devoid of much detail.  After carefully reviewing Plaintiff's
interrogatories, Defendants' initial responses, Plaintiff's initial
objections, Defendants' amended responses, and Plaintiff's current
objections, the Court finds that several of Defendants' responses
appear adequate given the wording of the requests, while some of
Plaintiff's objections have merit.  Ultimately, both sides are
simultaneously in the right and in the wrong.

In the written discovery process, parties are not entitled to
each and every detail that could possibly exist in the universe of

1   facts.   IBP, Inc. v. Mercantile Bank, 179 F.R.D. 316, 321 (D. Kan.
2   1998) ("To require specifically each and every fact and application
3   of law to fact, however, would too often require a laborious,
4   time-consuming analysis, search, and description of incidental,
5   secondary, and perhaps irrelevant and trivial details.   The burden
6   to answer then outweighs the benefit to be gained.").   Nor is
7   Plaintiff entitled to a narrative account of Defendants' case.   See
8   Lucero v. Valdez, 240 F.R.D. 591, 594 (D. N.M. 2007) ("Contention
9   interrogatories should not require a party to provide the equivalent
10  of a narrative account of its case, including every evidentiary
11  fact, details of testimony of supporting witnesses, and the contents
12  of supporting documents."); see also Gregg v. Local 305 IBEW, 2009
13  U.S. Dist. LEXIS 40761 (N.D. Ind. May 13, 2009) ("To respond would
14  be an unduly burdensome task, since it would require the Defendants
15  to produce veritable narratives of their entire case.") (citing IBP,
16  Inc.).

17       Further, to the extent Plaintiff seeks every minute detail
18  and narratives about the subject incident and every possible
19  surrounding circumstance, written discovery is not the proper
20  vehicle to obtain such detail.   Johnson v. Couturier, 261 F.R.D.
21  188, 192 (E.D. Cal. 2009) ("[I]t is not the purpose of early
22  interrogatory discovery to have one side or the other give a
23  complete rendition of each and every minute, factual detail which
24  will surface at trial."); IBP, Inc., 179 F.R.D. at 321 ("Other
25  discovery procedures, such as depositions and production of
26  documents, better address whatever need there be for that kind of
27  secondary detail.").   Plaintiff often uses the written interrogatory
28  process essentially as a substitute for depositions, engages in

1  hyper-critical word-play, and strenuously objects whenever the

2  responses are not worded as he wishes.  However, interrogatories and

3  depositions serve different functions:

> Written interrogatories are rarely, if ever, an adequate
> substitute for a deposition when the goal is discovery of
> a witness' recollection of conversations. . . .  Only by
> examining a witness live can a lawyer use the skills of
> his trade to plumb the depths of a witness' recollection,
> using to advantage not only what a witness may have
> admitted in answering interrogatories, but also any new
> tidbits that usually come out in the course of answering
> carefully framed and pin-pointed deposition questions.
> Written interrogatories are not designed for that pur-
> pose; pointed questions at deposition are the only
> effective way to discover facts bottled up in a witness'
> recollection.

11  Shoen v. Shoen, 5 F.3d 1289, 1297 (9th Cir. 1993).

12      The nature of Plaintiff's requests notwithstanding, Defen-

13  dants have engaged in dilatory tactics.  While simultaneously

14  accusing Plaintiff of hyper-sensitive word-play, Defendants engage

15  in improper tactics on several instances, as the Court will

16  elaborate below.  As just one example, Defendants keep several of

17  their responses general, lacking in any useful detail, and only

18  provide more detail when ordered to do so by the Court--and

19  sometimes not even then.  Further, at times, Defendants fail to

20  address the call of Plaintiff's question and answer a question not

21  asked.

22      The parties' behavior in this case is neither acceptable nor

23  productive.  Therefore, while the Court generally refrains from

24  shaping the substance of discovery responses or providing such

25  guidance, IBP, Inc., 179 F.R.D. at 319, the Court must do so in this

26  case in light of the entrenched positions the parties have taken and

27  Defendants' sometimes evasive and dilatory responses.  The Court

28  expects that this Order will be its final word on the disputes

1   before it, and the Court will consider sanctions if the parties

2   engage in further deliberate failures to obey the Court's Order or

3   engage in further dilatory tactics.

4   **A.      The Continuing Disputes**

5        Because the disputed interrogatories are currently scattered

6   among various entries on the Court's docket, the Court methodically

7   consolidates and rules on each disputed item below.

8        **1.   Kluge, Special Interrogatory No. 1**

9        **Plaintiff propounded the following interrogatory**: "Describe

10  in detail any and all training that YOU had received as a San Diego

11  [S]herriff's [D]eputy as of August 8, 2006, with regard to investi-

12  gating an individual suspected of violating California Penal Code

13  § 602(o)."  (Doc. No. 64-3 at 2.)

14       **Defendant Kluge's first response**:  "All my training with

15  regards to investigating an individual suspected of violating

16  California Penal Code [Section] 602(o), was obtained during training

17  scenarios and material given out to all cadets during my attendance

18  at the San Diego Regional Law Enforcement Academy training course,

19  during patrol phase training with a San Diego Sheriff's Department

20  Corporal or Filed [sic] Training Officer, and by reviewing the

21  trespassing sections of the California Penal Code book."  (Id.)

22       **Plaintiff's objection**:  "This response is non-responsive and

23  frivolous.  The interrogatory sought a detailed description of all

24  of the training Kluge received, yet nowhere in the response does

25  Kluge describe any of his training, etc., much less with any

26  specificity.  This is exactly the type of response to which the

27  Court ordered defendants Garrett and San Diego County to provide

28  amended responses.  Moreover, the 'material' referenced in Kluge's

response is so general that Bashkin cannot determine if it was included in Kludge's response to Bashkin's Request for Production of Documents, so as to render those responses deficient, as well." (Id. at 2-3.)

**Kluge's second response**:  "All my training with regards to investigating an individual suspected of violating California Penal Code [Section] 602(o), was obtained during training scenarios and material given out to all cadets during my attendance at the San Diego Regional Law Enforcement Academy training course, during patrol phase training with a San Diego Sheriff's Department Corporal or Filed [sic] Training Officer, and by reviewing the trespassing section of the California Penal Code book.  <u>I can't restate any specifics about such training without identifying a specific scenario.</u>" (Doc. No. 80, Ex. C at 1-2 (emphasis added to highlight new response).)

**Plaintiff's second objection**:  "Kluge's Supplemental Response is obstreperous.  Kluge agreed, through his counsel, to correct the deficiencies articulated by Bashkin in [his first objection]; otherwise, this would have remained a disputed response left for the Court to resolve.  The interrogatory sought a detailed description of all of the training Kluge received, yet <u>nowhere in the response does Kludge describe any of his training</u>, etc., much less with any specificity.  The only change made in Kluge's supplemental response was the addition of the final sentence: 'I can't restate any specifics about such training without identifying a specific scenario.'  This is pure nonesense [sic].  In fact, Kluge can and must provide specifics about his training because: (a) that is what he agreed to provide; and (b) Bashkin has identified the 'specific

scenario': Kluge's alleged probable cause to arrest Bashkin for trespassing, which comprises the defense in this case! Therefore, Kluge must describe his training in detail, as agreed upon, especially as it correlates to the unspecified 'training scenarios and material' referenced in both his original and amended responses." (Doc. No. 80 at 3 (citations and bold emphasis omitted; underling in original).)

**The Court's ruling**: This interrogatory is a more specific version of Special Interrogatory No. 4, below, which asks for the same information on "trespassing" in general rather than Section 602(o) specifically. Since "trespassing" includes various Penal Code sections, including Section 602(o), this interrogatory is redundant. Defendants shall not be required to further respond to Interrogatory No. 1, but must respond to Interrogatory No. 4 as ordered below.

    **2.   Kluge, Special Interrogatory No. 4**

**Plaintiff propounded the following interrogatory**: "Describe in detail any and all training YOU received as a San Diego County [S]heriff's [D]eputy as of August 8, 2006, with regard to investigating an individual suspected of trespassing." (Doc. No. 64-3 at 4.)

**Defendant Kluge's first response**: "See response to [Special Interrogatory] #1 above." (Id.)

**Plaintiff's objection**: "See [objection to Special Interrogatory No. 1]. Additionally, this is not the same as No. 1." (Id.)

**Kluge's second response**: "See response to [Special Interrogatory] #1 above." (Doc. No. 80, Ex. C at 3.)

1    **Plaintiff's second objection**: "Kluge's Supplemental Response
2    is obstreperous.  Kluge agreed, through his counsel, to correct the
3    deficiencies articulated by Bashkin in [his first objection] and to
4    provide a separate response (from his response to #1), since these
5    were not identical interrogatories.  However, the supplemental
6    response still only references his response to #1, with the only
7    change therein being the addition of the final sentence: 'I can't
8    restate any specifics about such training without identifying a
9    specific scenario.'  This is pure nonesense [sic].  In fact, Kluge
10   can and must provide specifics about his training because: (a) that
11   is what he agreed to provide; and (b) Bashkin has identified th
12   'specific scenario':  Kluge's alleged probable cause to arrest
13   Bashkin for trespassing, which comprises the defense in this case!
14   Therefore, Kluge must describe his training in detail, as agreed
15   upon, especially as it correlates to the unspecified 'training
16   scenarios and material' referenced in both his original and amended
17   responses." (Doc. No. 80 at 4 (citations and bold emphasis omitted;
18   underling in original).)"

19       **The Court's ruling**:  KLUGE IS ORDERED TO RESPOND TO THE
20   INTERROGATORY IN GOOD FAITH.  This interrogatory is a prime example
21   of a question that is more suitable as a deposition question than
22   one propounded in writing due to the amount of information it
23   requests.  However, it is also a prime example of where Kluge could
24   provide a substantive answer but refuses to do so.  On the one hand,
25   Plaintiff is asking for a narrative of all of Kluge's training.  On
26   the other hand, Defendant indicates that he received training on
27   trespass crimes in the academy and through field training, but
28

08CV1450

provides <u>no</u> detail whatsoever of any of the training.  As has been
the practice, his response remains general.

Moreover, the indication that he cannot describe any of his
training without Plaintiff's identification of specific scenarios is
dilatory and evasive.  That representation is suspect since the
interrogatory's subject matter, "investigating an individual
suspected of trespassing," is sufficiently narrow and Defendants
have provided specific academy training materials in other interrog-
atory responses that address trespassing investigations.

To the extent that Kluge received specific training during
field training (*e.g.*, received a radio call to investigate a
trespass with his field training officer), he should indicate as
much and describe the specific radio call or incident that provided
him the training opportunity.  In other words, <u>Kluge</u> shall identify
the training he received during field training since he is the one
with that knowledge.  However, because by its very nature field
training is experience-based and dependent on whatever radio call
the training unit receives, it is entirely possible that Kluge may
not have received a trespass call for the duration of his field
training.  If that is the case, Kluge should state so.  If he cannot
remember whether he received such a call (or received such a call
but cannot remember the details) because field training occurred
long ago, he should state so.  What he may not do is state generally
that he received field training on trespass investigations and leave
Plaintiff without <u>any</u> details.

To the extent that Kluge received any training on trespass
investigation in the academy, although Plaintiff is not entitled to
a <u>narrative</u> response, he is entitled to know what that training

1   consisted of.  If all of the training was contained in books or
2   other printed materials, Defendant is ORDERED to produce these to
3   Plaintiff in <u>paper</u> format.  If Kluge received additional academy
4   training that is not contained in books or other printed materials,
5   he is ORDERED to describe that training as his memory permits.

6          **3.**   <u>**Kluge, Special Interrogatory No. 9**</u>

7        **Plaintiff propounded the following interrogatory**:  "Describe
8   in detail each and every policy or procedure of the San Diego
9   Sheriff's Department as of August 8, 2006, with regard to how its
10   deputies were supposed to document suspected crimes." (Doc. No. 64-
11   3 at 5.)

12        **Defendant Kluge's first response**:  "The question is too broad
13   in order for me to properly respond.  However if Mr. Bashkin had
14   been placed under citizen's arrest or arrest by me for violating any
15   section of the California Penal [C]ode trespassing laws [sic] an
16   arrest report and a citation would have been completed/issued to Mr.
17   Bashkin for the misdemeanor offense.  Mr. Bashkin was not placed
18   under arrest at any point, but was repeatedly advised that he risked
19   being placed under arrest if he did not comply with the lawful order
20   to leave the Barona Casino property at once." (<u>Id.</u> at 6.)

21        **Plaintiff's objection**:  "This response is evasive, incom-
22   plete, and non-responsive.  On its face, the interrogatory is not
23   'too broad'; there is no explanation as to why it is 'too broad';
24   and no proper objection was posited in support of that position.  It
25   is a perfectly legitimate and relevant question that requires a
26   response on the merits; either there are policies and/or procedures
27   for documenting suspected crimes or there are not.  Moreover, the
28   question did not ask about documenting a 'crime'; it sought

1  information about documenting a 'suspected' crime.'  If there are no

2  policies or procedures for 'documenting a suspected crime,' then

3  Kluge must state so.  Conversely, if there are, then he must answer

4  the interrogatory and 'describe' those policies and procedures 'in

5  detail.'"  (<u>Id.</u>)

6      **Kluge's second response**:  "The question is too broad in order

7  for me to properly respond.  However if Mr. Bashkin had been placed

8  under citizen's arrest or arrest by me for violating any section of

9  the California Penal [C]ode trespassing laws [sic] an arrest report

10 and a citation would have been completed/issued to Mr. Bashkin for

11 the misdemeanor offense.  Mr. Bashkin was not placed under arrest at

12 any point, but was repeatedly advised that he risked being placed

13 under arrest if he did not comply with the lawful order to leave the

14 Barona Casino property at once.  <u>No policies exist for documenting</u>

15 <u>potential crimes, only actual crimes and arrests.</u>" (Doc. No. 80, Ex.

16 C at 3 (emphasis added to highlight new response).)

17     **Plaintiff's second objection**:  "Kluge's Supplemental Response

18 is obstreperous.  Kluge agreed, through his counsel, to correct the

19 defects articulated by Bashkin in [his first objection]; otherwise,

20 this would have remained a disputed response left for the Court to

21 resolve.  Specifically, he agreed to provide an amended response

22 that deleted all of the irrelevant verbiage and simply states that:

23 'There were no policies in effect at that time for documenting

24 ***suspected*** crimes.'  Instead, his supplemental response incorporated

25 the original irrelevancies and added the following non-responsive

26 sentence:  'No policies exist for documenting ***potential*** crimes, only

27 actual crimes and arrests.'  Kluge must respond pursuant to the

28

1  parties' agreement." (Doc. No. 80 at 4-5 (some emphasis omitted;
2  remaining emphasis in original).)

3      **The Court's ruling:**  This interrogatory is an example of one
4  that is unsuitable as a written interrogatory and should have been
5  a request for document production instead.  Quite simply, Plaintiff
6  is not entitled to Kluge's re-creation of the Sheriff's written
7  policies and procedures ("P&Ps").  Written P&Ps speak for themselves
8  and their production is sufficient.  Requiring Kluge to summarize in
9  narrative form what Plaintiff can read himself is unduly burdensome
10 and unreasonable.  Moreover, Plaintiff's second objection demon-
11 strates his practice of hyper-critical dissection of Defendants'
12 responses.

13     In any event, Kluge directly responded to this interrogatory:
14 No such policy exists.  That response is clear and directly
15 responsive to the interrogatory.  Kluge shall not be compelled to
16 further respond.

17          **4.   Kluge, Special Interrogatory No. 10**

18     **Plaintiff propounded the following interrogatory**:  "Identify
19 with particularity any limitations placed on the amount of informa-
20 tion (e.g., the number of words, characters or letters) that YOU
21 could include in the August 8, 2006 'Unit History' ([a.k.a.] 'CAD')
22 disposition YOU made of the INCIDENT."  (Doc. No. 64-3 at 6.)

23     **Defendant Kluge's first response**:  "There are 'character'
24 limitations placed on the amount of information that can be written
25 down when making a disposition in regards to an event on a San Diego
26 Sheriff's Department Mobile Data Computer in patrol vehicles.  The
27 'Unit History' or 'CAD' disposition requires some documentation as
28 to the action(s) taken while at the scene of a call or observed

1  activity.  The information should include the person(s) contacted,

2  where contacted and why."  (<u>Id.</u>)

3      **Plaintiff's objection**:  "The response is frivolous, evasive

4  and non-responsive.  The request did not ask '<u>**if**</u>' there were

5  character limitations placed on the amount of information included

6  in the CAD; it asked what were those limitations.  In his

7  deposition . . . , Kluge testified that '[y]ou're limited as far as

8  what you can put in there because it will only accept so many

9  characters or words or letters, so you have to be extremely brief.'

10  Thus, this interrogatory seeks information as to those specific

11  limitations.  Respondent stated there were 'character' limitations;

12  so, what are those limitations?  Where are those limitations

13  documented (in a policy manual, regulation, etc.)?  Moreover,

14  regarding that portion of Kluge's response referencing the 'Unit

15  History' or 'CAD' documentation or information required, what is the

16  <u>specific</u> information required and where are those requirements

17  documented?"  (<u>Id.</u> at 7 (emphasis in original).)

18      **Kluge's second response**:  "There are 'character' limitations

19  placed on the amount of information that can be written down when

20  making a disposition in regards to an event on a San Diego Sheriff's

21  Department Mobile Data Computer in patrol vehicles.  <u>I don't know</u>

22  <u>the exact limit, but at that time it wasn't much.</u>  The 'Unit

23  History' or 'CAD' disposition requires some documentation as to the

24  action(s) taken while at the scene of a call or observed activity.

25  The information should include the person(s) contacted, where

26  contacted and why." (Doc. No. 80, Ex. C at 3-4 (emphasis added to

27  highlight new response).)

28

**Plaintiff's second objection**: "Kluge's Supplemental Response is obstreperous.  Kluge agreed, through his counsel, to correct the deficiencies articulated by Bashkin in [his first objection], including to: (a) specify the <u>exact limitations</u> placed on the amount and type of information that could be contained in Kluge's 'Unit History' or 'CAD' disposition; (b) identify the origin of those limitations; i.e., whether they are set forth in some policy or are purely a function of the 'CAD' device itself; and (c) identify the specific policy that supports the last two sentences of his response:  'The "Unit History" or "CAD" disposition *requires* some documentation as to the action(s) taken while at the scene of a call or observed activity.  The information *should* include the person(s) contacted, where contacted and why.'

Instead, the only change Kluge made in his response was to add the representation that '**I don't know the exact limit, but at that time it wasn't much.**'  This supplementation not only breaches the parties' agreement, but is equivocal and, most likely, fraudulent.  On the one hand, Kluge asserts that there is a 'character' limit; yet on the other hand, he now represents that he does not know what that limit is, thus begging the question:  then how does he know that there is a limit and that the limit 'wasn't much'?!

In his deposition, Kluge claimed that he did not contemporaneously document key elements of the defense; e.g., Bashkin's alleged refusal to leave Barona and Kluge's alleged non-forceful 'arm guiding' of Bashkin, because of the character limitations placed on his CAD disposition.  It is undisputed that Bashkin is entitled to discover exactly what those limitations were and decide how best to process that information.  If, in fact, Kluge is lying,

08CV1450

1    and that the CAD either had no limitations or there were many more

2    characters that Kluge could have used, then Bashkin is entitled to

3    utilize this information to his advantage at trial.

4        The bottom line is that Kluge either knows the exact

5    character limitations placed on his CAD disposition or could have

6    easily obtained that information through defendant San Diego County,

7    Kluge's employer and a co-defendant in this lawsuit.  Regardless,

8    Kluge agreed to provide this information in his supplemental

9    response to this interrogatory, yet failed to do so.  The informa-

10   tion sought by Bashkin in this interrogatory is vital to the

11   prosecution of this lawsuit, going directly to defendants' credibil-

12   ity and the impeachment thereof, regarding a material issue in this

13   lawsuit."  (Doc. No. 80 at 5-6 (all emphasis in original).)

14       **The Court's ruling:**  Kluge shall not be compelled to further

15   respond.  Kluge, as a user of the CAD (not the inventor, programmer,

16   or IT professional), has stated that he knows there is some sort of

17   character limit but does not know what the specific limit is.  His

18   knowledge of some form of limit is presumably based on his past

19   experience as he has tried to input an entry that exceeded the

20   character limit.  Plaintiff insists that Kluge must know what the

21   CAD character limit is and demands a specific number.  However,

22   given that Kluge is merely a user of the CAD system and has

23   represented that he does not know the exact character limit, his

24   second answer is responsive.  Ultimately, Kluge is not the correct

25   party to whom this interrogatory should be directed, as Plaintiff

26   himself seems to recognizes ("[Kluge] could have easily obtained

27   that information through defendant San Diego County, Kluge's

28   employer and a co-defendant in this lawsuit").

1        **5.**   **Kluge, Special Interrogatory No. 23**

2      **Plaintiff propounded the following interrogatory**: "Identify

3 with particularity any money or things of value that the San Diego

4 County Sheriff's Department has ever received from BARONA or any of

5 its representatives." (Doc. No. 64-3 at 15.)

6      **Defendant Kluge's first response**: "I can't answer this

7 question since it requests personal knowledge and information

8 regarding any possible money or things of value exchanged between the

9 San Diego Sheriff's Department, the Barona Casino, or its representa-

10 tives. I am a Detective with the San Diego Sheriff's Department and

11 the question is not something I would know in my current or past job

12 position(s) with the County of San Diego." (Id.)

13      **Plaintiff's objection**: "The response is purposely evasive.

14 Respondent must answer the question, if he is knowledgeable of 'any

15 money or things of value that the San Diego County Sheriff's

16 Department has ever received from BARONA or any of its representa-

17 tives.' As to the last sentence of the response, the question is not

18 seeking information about something that respondent 'might' know

19 about his 'current or past job position(s) with the County of San

20 Diego.' It seeks information regarding respondent's <u>actual</u> knowl-

21 edge, irrespective of what is 'generally' known by an employee in his

22 job capacity." (Id. (emphasis in original).)

23      **Kluge's second response**: "I do not know. I am a Detective

24 with the San Diego Sheriff's Department and the question is not

25 something I would know in my current or past job position(s) with the

26 County of San Diego." (Doc. No. 80, Ex. C at 5.)

27      **Plaintiff's second objection**: "Kluge's Supplemental Response

28 is obstreperous. Kluge agreed, through his counsel, to either:

1   (a) identify any money or things of value that the San Diego County

2   Sheriff's Department has ever received from BARONA or any of its

3   representatives; or (b) simply state that 'I do not know of any money

4   or things of value that the San Diego County Sheriff's Department has

5   ever received from BARONA or any of its representatives.'  Instead,

6   Kluge now responds by stating only that '**I do not know.**'  Without

7   more (e.g., I do not know of any . . .), the response remains evasive

8   and ambiguous; e.g., it could mean that 'I do not know the specif-

9   ics,' or 'I do not know how much the San Diego County Sheriff's

10   Department has received.'"  (Doc. No. 80 at 6 (emphasis in origi-

11   nal).)

12       **The Court's ruling:**  Kluge shall not be compelled to further

13   respond.  Plaintiff's continued hyper-critical analysis of Kluge's

14   second response is a clear example of his pattern of conduct in this

15   case.  He is not satisfied with, "I do not know," and demands that

16   Kluge state, "I do not know of any money or things of value that the

17   San Diego County Sheriff's Department has ever received from BARONA

18   or any of its representatives."  However, the response Plaintiff

19   demands requires Kluge to have actual knowledge that the Sheriff's

20   Department either did or did not receive money or goods from Barona.

21   Kluge states he has insufficient knowledge to answer this question

22   either way.  His answer is responsive to the interrogatory.

23   Plaintiff may not dictate the exact wording of Kluge's response.

24       **6.   Garrett, Special Interrogatory No. 12**

25       **Plaintiff propounded the following interrogatory**:  "Please

26   DESCRIBE what YOU were doing at all times during the INCIDENT."

27   (Doc. No. 64-4 at 8.)

28

1      **Defendant Garrett's first response**: "See response to

2 Interrogatory No. 1" (<u>Id.</u>)

3      **The Court previously ordered**: "DEFENDANT IS COMPELLED TO

4 PROVIDE A FURTHER RESPONSE. Defendant must provide more detail

5 regarding his actions at the time of the incident. However, to the

6 extent that the response to Interrogatory 9 or 11 is sufficiently

7 detailed, the response need not overlap." (Doc. No. 59 at 5.)

8      **Garrett's second response after the Court's order**: "I was

9 observing Deputy Kluge assess Plaintiff for 5150 and listened as the

10 casino security staff and Deputy Kluge requested Plaintiff to leave

11 the premises. I walked outside with Plaintiff and Deputy Kluge to

12 the patrol car. My complete statement to Internal Affairs and the

13 IA Report have been provided to Plaintiff and my statement is

14 summarized in the report at pp. 24-27." (<u>Id.</u>)

15      **Plaintiff's objection**: "First, the response is in violation

16 of the court order that '[d]efendant must provide more detail. . . .'

17 The few details actually provided are sketchy and conclusory at best.

18 Second, respondent cannot incorporate by reference his 'complete

19 statement to Internal Affairs,' given that: (a) the IA Report only

20 contains a summary of that statement; (b) it has not been authenti-

21 cated or properly incorporated into his response; and (c) the court

22 order did not allow him to do so." (<u>Id.</u>)

23      **Garrett's third response**: "I was observing Deputy Kluge

24 assess Plaintiff for 5150 and listened as the casino security staff

25 and Deputy Kluge requested Plaintiff to leave the premises. <u>I left</u>

26 <u>the room several times to ask Barona staff about Plaintiff's</u>

27 <u>statements regarding suicide.</u> I walked outside with Plaintiff and

28

          08CV1450

1  Deputy Kluge to the patrol car.  My complete statement to Internal

2  Affairs and the IA Report have been provided to Plaintiff and my

3  statement is summarized in the report at pp. 24-27." (Doc. No. 80,

4  Ex. D at 2  (emphasis added to highlight new response).)

5      **Plaintiff's second objection**: "Garrett's Second Supplemental

6  Response is obstreperous and in direct violation of the prior court

7  order.  The only change is the addition of the following sentence:

8  'I left the room several times to ask Barona Staff about Plaintiff's

9  statements regarding suicide.'  Garrett agreed, but has failed, to

10 cure the defects addressed in the court order and set forth in

11 Bashkin's [first objection].  The added information only exacerbates

12 the defect, because this new 'fact' is even more sketchy than the

13 existing ones.

14      Garrett was ordered and agreed to answer the interrogatory <u>as</u>

15 <u>written</u>, which is to 'describe' in detail (as defined by Bashkin in

16 the set of interrogatories served on Garrett) what he was doing 'at

17 all times' [sic] during the incident.'  Since none of Garrett's

18 responses to this interrogatory claim an impaired recollection, and

19 since Garrett's liability in this lawsuit is dependent upon his

20 failure to 'intercede' when Kluge violated Bashkin's constitutional

21 rights, if Garrett 'had an opportunity to intercede,' then his

22 response remains woefully inadequate.

23      Moreover, if Garrett is going to rely upon his 'complete

24 statement to Internal Affairs,' despite the court order, then he must

25 set forth that 'complete statement to Internal Affairs,' in his

26 verified response (e.g., as an attachment), not simply reference a

27 summary of that statement." (Doc. No. 80 at 7 (footnote, emphasis,

28 and citations omitted).)

1    **The Court's ruling:**  Garrett's third response adds that he

2    left the detention room several times but does not indicate when and

3    for how long.  This interrogatory is yet another example of a subject

4    matter that is better suited for a deposition because Plaintiff could

5    ask a series of questions about Garrett's whereabouts during the

6    times he was absent as well as the duration of his absence each time.

7    The deposition process allows for a back-and-forth question and

8    answer process, whereas written discovery does not.

9        Nonetheless, Garrett's response is impermissibly general.

10   Garrett is therefore ORDERED TO RESPOND IN GOOD FAITH.  Specifically,

11   Garrett is to set forth the following to the best of his ability:

12   (a) Whether he was present with Kluge and Plaintiff at all times from

13   the beginning to the end of the contact with Plaintiff; (b) if he was

14   not present with Kluge at all times, how many times he left Kluge's

15   side; (c) for each time he left Kluge's presence, when during the

16   contact his absence occurred; (d) how long he was absent each time;

17   and (e) what he was doing when he was absent.  If Garrett does not

18   have the present ability to remember each and every instance he was

19   away from Kluge, or for how long he was absent, he should state so

20   but nonetheless address the above as his memory permits.  As

21   Garrett's third response to this interrogatory and the Court's

22   guidance demonstrate, Defendants' exasperated representation that

23   there simply is no further information they can provide, see Doc. No.

24   82 at 2, is disinguous and not well taken.

25       **7.   San Diego County, Special Interrogatory No. 21**

26       **Plaintiff propounded the following interrogatory**: "As of

27   August 8, 2006, DESCRIBE all of the training the DEFENDANT DEPUTIES

28   had received from the San Diego County Sheriff's Department with

1   regard to investigating a suspected trespass, specifically including

2   those situations wherein an individual fails to leave a property at

3   the request of either the property owner or a law-enforcement [sic]

4   officer."  (Doc. No. 64-5 at 11.)

5       **Defendant San Diego County's first response**:  "Objection:

6   vague and ambiguous, indefinite as to time; seeks information not

7   relevant to the subject matter of this action nor reasonably

8   calculated to lead to the discovery of admissible evidence; requests

9   material not in the custody or control of this responding party;

10  seeks privileged information in a manner in violation of California

11  Penal Code § 832.7 and Evidence Code § 1043; seeks disclosure of

12  official information acquired in confidence; seeks information

13  protected from disclosure under the provision of the Federal Privacy

14  Act; disclosure of personnel, medical and similar files is an

15  unwarranted invasion of personal privacy impermissible under the

16  Freedom of Information Act and Government Code § 6254(c); seeks

17  records and information compiled for law enforcement purposes which

18  are exempt from disclosure because production could constitute an

19  unwarranted invasion of privacy.  Without waiving the objections,

20  academy and in-service training."  (Id.)

21      **The Court previously ordered**:  "DEFENDANT IS COMPELLED TO

22  PROVIDE A FURTHER RESPONSE.  The request is limited in scope so that

23  Defendant shall provide Plaintiff with a list of deputy training

24  encompassing the issues of excessive force and unlawful search."

25  (Doc. No. 59 at 4.)

26      **San Diego County's second response after the Court's order**:

27  "Objection:  vague and ambiguous, indefinite as to time; seeks

28  information not relevant to the subject matter of this action nor

1  reasonably  calculated  to  lead  to  the  discovery  of  admissible

2  evidence; requests material not in the custody or control of this

3  responding  party;  seeks  privileged  information  in  a  manner  in

4  violation of California Penal Code § 832.7 and Evidence Code § 1043;

5  seeks  disclosure  of  official  information  acquired  in  confidence;

6  seeks information protected from disclosure under the provision of

7  the Federal Privacy Act; disclosure of personnel, medical and similar

8  files is an unwarranted invasion of personal privacy impermissible

9  under the Freedom of Information Act and Government Code § 6254(c);

10 seeks records and information compiled for law enforcement purposes

11 which are exempt from disclosure because production could constitute

12 and unwarranted invasion of privacy.  Without waiving the objections,

13 academy and in-service training.

14          (1) California Commission on Peace Officer Standards and

15              Training (POST)

16              Basic Course Workbook Series Student Materials

17              Learning Domain 20 Use of Force Version Two

18          (2) California Commission on Peace Officer Standards and

19              Training (POST)

20              Basic Course Workbook Series Student Materials

21              Learning Domain 16 Search and Seizure Version Four

22          (3) San Diego County Sheriff Training Bulletin

23              William D. Gore, Sheriff December 2009

24              'Back to Basics' Training Bulletin Series

25          (4) San Diego County Sheriff Training Bulletin

26              William D. Gore, Sheriff September 2009 #2

27              Contacts, Detentions, Handcuffing & Pat Downs

28          (5) Field Training – SEARCHES

1          (6) Field Training – USE OF FORCE

2   (Doc. No. 64-5 at 11-12.)

3          **Plaintiff's first objection**:  "The objections are frivolous

4   and must be stricken; the Court has ordered defendant to respond on

5   the merits.  In terms of 'describing' the training of the 'defendant

6   deputies,' it is woefully inadequate, as it only describes a portion

7   of the 'identity of the material' referencing or relating to the

8   training.  It does not describe, e.g., the dates, place and partici-

9   pant of the training, or even what the training consisted of.

10  Moreover, the list of documents included in the supplemental response

11  directly contradict, and are inexplicably omitted from, the corre-

12  sponding list of documents set forth in defendant Kluge's supplemen-

13  tal response to Request for Production No. 16 (as well as this

14  defendant's Supplemental Amended Response to Special Interrogatory

15  No. 22)."  (Doc. No. 64-5 at 12-13.)

16         **San Diego County's's third response**:  "Objection:  vague and

17  ambiguous, indefinite as to time; seeks information not relevant to

18  the subject matter of this action nor reasonably calculated to lead

19  to the discovery of admissible evidence; requests material not in the

20  custody or control of this responding party; seeks privileged

21  information in a manner in violation of California Penal Code § 832.7

22  and Evidence Code § 1043; seeks disclosure of official information

23  acquired in confidence; seeks information protected from disclosure

24  under the provision of the Federal Privacy Act; disclosure of

25  personnel, medical and similar files is an unwarranted invasion of

26  personal privacy impermissible under the Freedom of Information Act

27  and Government Code § 6254(c); seeks records and information compiled

28  for law enforcement purposes which are exempt from disclosure because

1  production could constitute and unwarranted invasion of privacy.

2  Without waiving the objections, academy and in-service training.

3       (1) California Commission on Peace Officer Standards and

4           Training (POST)

5           Basic Course Workbook Series Student Materials

6           Learning Domain 20 Use of Force Version Two

7           **Table of Contents**
           **Chapter 1:  Introduction to the Use of Force**
8           Overview
           Reasonable Force
9           Authority to Use Force
           Chapter Synopsis
10          Workbook Learning Activities
           **Chapter 2:  Force Options**
11          Overview
           Force Options
12          Resistance
           Communication
13          Chapter Synopsis
           Workbook Learning Activities
14          **Chapter 3:  Use of Deadly Force**
           Overview
15          Considerations Regarding the Use of Deadly Force
           Justifiable Homicide by Public Officer
16          Chapter Synopsis
           Workbook Learning Activities
17          **Chapter 4:  Documenting Use of Force**
           Overview
18          Documenting the Use of Force
           Report Writing Tip
19          Chapter Synopsis
           Workbook Learning Activities
20          **Chapter 5:  Concept of Control in Use of Force**
           Overview
21          The Concept of Control in Use of Force
           Self Control
22          Role of Initial and Ongoing Training
           Chapter Synopsis
23          Workbook Learning Activities
           **Chapter 6:  Consequences of Unreasonable Force**
24          Overview
           Peace Officer and Agency Liability
25          Failure to Intervene
           Intervention Techniques
26          Factors Affecting Intervention
           Chapter Synopsis
27          Workbook Learning Activities

28

(2)   California Commission on Peace Officer Standards and Training (POST)

Learning Domain 16 Search and Seizure Version Four

**Table of Contents**
**Chapter 1:  Basic Principles of Search and Seizure**
Overview
Fourth Amendment Protections
Reasonable Exercise of Privacy
Probably Cause to Search
Chapter Synopsis
Workbook Learning Activities
**Chapter 2:  Warrant Searches and Seizures**
Overview
Introduction to Warrant Searches
Probable Cause to Search
Execution of a Search Warrant
Chapter Synopsis
Workbook Learning Activities
**Chapter 3:  Warrantless Searches and Seizures**
Overview
Plain View Searches
Warrantless Searches in General
Cursory/Frisk/Pat Searches
Consent Searches
Exigent Circumstances Searches
Searches Incident to Arrest
Probation/Parole Searches
Chapter Synopsis
Workbook Learning Activities
**Chapter 4:   Searches and Seizures Involving Motor Vehicles**
Overview
Probable Cause Searches of Vehicles
Plain View Seizures from Vehicles
Protective Searches of Vehicles
Consent Searches of Vehicles
Searches of Vehicles Incident to Custodial Arrests
Searches of Vehicles as Instrumentalities
Vehicle Inventories
Chapter Synopsis
Workbook Learning Activities

(3)   San Diego County Sheriff Training Bulletin

William D. Gore, Sheriff December 2009

Back to Basics Training Bulletin Series

"The Basics" include:

- Maintaining situational awareness
- Recognize and respond to danger signs
- Recognize and use cover

08CV1450

- Use clear and accurate radio communications
- Request backup, wait for backup, and utilize backup as a resource
- Pre-plan and work together as a team when additional backup arrives

    (4)   San Diego County Sheriff Training Bulletin

        William D. Gore, Sheriff September 2009 #2

        Contacts, Detentions, Handcuffing & Pat Downs

- Consensual encounters
- Detentions:
- Pat Downs or Frisks
- Handcuffing During a Detention

   (5) Field Training – SEARCHES

   (6) Field Training – USE OF FORCE

(Doc. No. 80, Ex. E at 3-5.)

    **Plaintiff's second objection**: "Defendant San Diego County's Second Supplemental Amended Response is obstreperous. Defendant agreed, but has failed, to cure the defects set forth in [Plaintiff's objection]. As set forth therein, the objections are frivolous and must be stricken; the Court has ordered defendant to respond on the merits. Defendant agreed, through its counsel[,] to 'describe' (as defined by Bashkin in the set of interrogatories served on it) the training of the 'defendant deputies.' Defendant has reneged on that agreement. Its response only describes a portion of the 'identity of the material' referencing or relating to the training. It does not describe, e.g., the dates, place and participant of the training, or even what the training consisted of. The deficiencies are magnified by defendants' failure to produce the documents listed in the response." (Doc. No. 80 at 8.)

    **The Court's ruling:** This disputed interrogatory is yet another clear example of both the nature of Plaintiff's demanding requests and Defendants' dilatory behavior. On the one hand,

1   Plaintiff demands that the County provide a detailed narrative

2   response that includes the deputies' training, including the date,

3   place of training, and persons who attended the training.   This

4   undertaking will require the County to expend a considerable amount

5   of time and effort, and its response may be voluminous.   Keeping in

6   mind the nature of the  discovery tool employed here--*i.e.*, written

7   discovery--Plaintiff is not entitled to such a minutely-detailed

8   response.   Requiring the County to set forth all of the responsive

9   training in a written discovery response is an overly burdensome and

10   unreasonable mandate.   That same information is available in the

11   books and other printed materials the County has identified, and it

12   makes no sense to require the County to re-write those books and

13   materials in its discovery responses.   Moreover, a <u>deposition</u> of a

14   defensive tactic instructor or field training officer is a more

15   appropriate method to explore use of force training because of the

16   amount of time allotted and the real-time ability to mine the depths

17   of the deponents' knowledge.   If Plaintiff has not deposed such a

18   person, he cannot use written discovery as a deposition substitute

19   now.

20        For its part, the County's responses demonstrate its failure

21   to cooperatively participate in good faith in the discovery process

22   at times.   The deputies' training is a relevant subject matter in

23   this case.   After a court order and 3 responses, all the County can

24   muster is to provide table of contents entries without much in the

25   way of substance.   Importantly, unlike the interrogatories that

26   address policies and procedures, the County has not stated that it

27   has produced the materials it identifies in this interrogatory.

28

1  Thus, all Plaintiff is left with is a table of contents for books
2  that have not been produced to him.

3        Having reviewed what the County has identified in its third
4  response, the Court finds that the information contained in the books
5  and materials identified is responsive so long as the materials are
6  produced to Plaintiff, who can then review the training materials
7  himself.   The County is not required to prepare another written
8  response.   Therefore, the County is ORDERED to produce to Plaintiff
9  <u>hard copies</u> of all of the books and printed materials identified in
10 its third response.   Further, the County may not continue its
11 practice of providing piecemeal responses.   The County is further
12 ORDERED to produce any other books or materials that bear on use of
13 force and search and seizure and which have not been identified to
14 date.   The County's production shall be complete and include all
15 relevant documents presently within its knowledge.   Withholding or
16 failing to produce relevant documents may result in appropriate
17 sanctions, as this is now the <u>second</u> court order compelling a
18 response to this interrogatory.

19 **B.**       **<u>Disputes on Which the Court Previously Reserved Judgment</u>**

20           **1.**   **<u>San Diego County, Special Interrogatory No. 4</u>**

21        **Plaintiff propounded the following interrogatory**:   "Please
22 set forth each and every fact that supports YOUR denial of the
23 allegations contained in Paragraph 18 of the COMPLAINT"   (Doc. No.
24 64-5 at 3.)

25        **Defendant San Diego County's first response**:   "Objection.
26 The interrogatory is vague and ambiguous.   Without waiving the
27 objection, no such policies exist and all deputies are thoroughly
28 trained."   (<u>Id.</u>)

1     **The Court previously ordered**: "DEFENDANT IS COMPELLED TO

2  PROVIDE A FURTHER RESPONSE.   Defendant shall provide facts that

3  support its denial of Plaintiff's remaining claims.   If the previ-

4  ously produced Internal Affairs file contains the responsive

5  information, Defendant shall identify the responsive portions by

6  Bates stamp number."  (Doc. No. 59 at 3.)

7     **San Diego County's second response**:   "Objection.   The

8  interrogatory is vague and ambiguous.  Without waiving the objection,

9  no such policies exist.   All deputies are thoroughly trained with

10  respect to the use of force and searches and seizures in academy

11  training, during patrol field training[,] and with regular in-service

12  training bulletins."  (Doc. No. 64-5 at 3.)

13     **Plaintiff's objection**: "Defendant supplied inadequate facts.

14  Paragraph 18 of the Complaint set [sic] forth as follows:

> 18.  Defendant SAN DIEGO COUNTY either maintained a
> policy that allowed its [S]heriff's [D]eputies, including
> KLUGE and GARRETT, to engage in the lawlessness set forth
> [in the Complaint], or acted recklessly, intentionally or
> with gross negligence in failing to adequately train its
> [S]heriff's [D]eputies, including KLUGE and GARRETT, with
> regard to the aforementioned unlawful acts.

19     The objection is frivolous and must be stricken; the Court

20  has Ordered defendant to respond on the merits.   The response does

21  not supply facts, but only conclusions, i.e., 'all deputies are

22  thoroughly trained.'   Incorporating Response No. 21 does not solve

23  the problem because that interrogatory is materially different than

24  No. 4[.]  No. 21 involves 'suspected trespass,' while No. 4 involves

25  'the use of force and searches and seizure.'   Plaintiff is entitled

26  to know exactly how the defendant deputies were specifically trained

27  with regard to 'the use of force and searches and seizures.'"  (<u>Id.</u>

28  at 4.)

1   **The Court's ruling:**   The County shall not be compelled to
2   further respond.   The County's answer is responsive.   First, the
3   County responds to Paragraph 18's allegation that a policy of
4   lawlessness existed as follows:   No such policy existed.   Based on
5   the non-existence of such a policy, there simply is no further
6   information to extract from the County on this topic.   Second, in
7   response to Paragraph 18's allegation that the deputies were not
8   sufficiently trained, the County simply states that they were
9   adequately trained.   This is yet another general response which the
10  County certainly could have elaborated.   However, given that other
11  interrogatories address this training issue, the County need not
12  respond to this interrogatory so long as it complies with the Court's
13  Order as to the others.   Specifically, Defendants' compliance with
14  the Court's Order with respect to Interrogatory No. 21 to San Diego
15  County and Interrogatory No. 4 to Kluge will be deemed responsive to
16  the instant interrogatory since the training materials support the
17  County's denial that the deputies were insufficiently trained.

18      **2.   San Diego County, Special Interrogatory No. 12**

19      **Plaintiff propounded the following interrogatory**:  "DESCRIBE
20  the reasons for the use of force against BASHKIN, as alleged in the
21  COMPLAINT, and include the following:

22      (a) The type of force used;

23      (b) DESCRIBE the reason(s) for each use of force;

24      (c) The circumstances that led the DEFENDANT DEPUTIES to

25      believe there was probable cause to use force against

26      BASHKIN;

27      (d) All details involving the use of force; and

28      (e) Whether BASHKIN was charged with anything as a result

1     and, if so, the specific charge.

2  (Doc. No. 64-5 at 6.)

3     **Defendant San Diego County's first response**: "Not applica-

4  ble."  (<u>Id.</u>)

5     **The Court previously ordered**: "DEFENDANT IS COMPELLED TO

6  PROVIDE A FURTHER RESPONSE.  Defendant's current response of not

7  applicable is non responsive to the question asked." (Doc. No. 59

8  at 3.)

9     **San Diego County's second response**: "Deputy Kluge handcuffed

10  Bashkin in order to escort him out of the casino after he had been

11  expelled.  He was handcuffed for officer safety and because he

12  threatened suicide and had refused to leave the casino after being

13  expelled.  No charges resulted." (Doc. No. 64-5 at 7.)

14     **Plaintiff's objection**: "The response is non-responsive as to

15  the use of force identified in paragraph 10 of the Complaint (and

16  referenced by Kluge in his Internal Affairs Statement): 'pinning

17  PLAINTIFF's wrists behind his back.'  As to the response to the one

18  type of force identified - handcuffing - respondent failed to respond

19  to subsection (d); i.e., defendant failed to provide '[a]ll details

20  involving the uses of force." (<u>Id.</u>)

21     **The Court's ruling:** The County shall not be compelled to

22  further respond.  By this interrogatory, Plaintiff apparently

23  attempts to force the County to admit that Kluge pinned Plaintiff's

24  wrists behind his back.  The County apparently denies this occurred

25  because it identifies "handcuffing" as the only use of force employed

26  against Plaintiff.  Again, this is a topic more aptly explored in

27  Kluge's deposition than through written interrogatories.  In any

28  event, the County has sufficiently responded to the interrogatory as

1   drafted.  The pinning of Plaintiff's wrists behind his back was not
2   included in the interrogatory's verbiage; the subject matter was "use
3   of force" in general.  In response, San Diego County stated that
4   Plaintiff was handcuffed.  Although this response is not one that
5   pleases Plaintiff, the Court will not compel the County to further
6   respond as Plaintiff sees fit to dictate.  If the County avers Kluge
7   did not pin Plaintiff's wrists behind his back, the Court declines
8   to force it to state otherwise.

9           **3.   San Diego County, Special Interrogatory No. 13**

10          **Plaintiff propounded the following interrogatory**: "DESCRIBE
11   the reasons for the use of restraint against BASHKIN, as alleged in
12   the COMPLAINT, and include the following:

13          (a) The type of restraint used;

14          (b) DESCRIBE the reason(s) for each restraint;

15          (c) The circumstances that led the DEFENDANT DEPUTIES to

16          believe there was probable cause to use restraint against

17          BASHKIN;

18          (d) All details involving the use of those restraints;

19          and

20          (e) Whether BASHKIN was charged with anything as a result

21          and, if so, the specific charge.

22   (Doc. No. 64-5 at 7.)

23          **Defendant San Diego County's first response**:  "Objection.
24   The interrogatory is vague and ambiguous.  Without waiving the
25   objection, Plaintiff was briefly handcuffed because he was angry and
26   [sic] agitated and had threatened suicide.  Deputies were concerned
27   for their safety and his safety.  No charges were involved." (Id.)

28

1    **The Court ordered**:   "GRANTED IN PART AND DENIED IN PART.

2    Defendant shall provide a further response only to portion (d) of

3    the interrogatory that requests details involving any restraints

4    used against Plaintiff.   Defendant may cite portions of Defendant

5    Kluge's deposition if responsive and sufficient to describe details

6    regarding use of restraint in the incident."   (Doc. No. 59 at 4.)

7    **San Diego County's second response**:   "Objection.   The

8    interrogatory is vague and ambiguous.   Without waiving the objec-

9    tion, Plaintiff was briefly handcuffed because he was angry and

10   [sic] agitated and had threatened suicide.   Deputies were concerned

11   for their safety and his safety.   No charges were involved.   <u>See</u>

12   <u>Deposition of Kluge at pp. 174-207.</u>"   (Doc. No. 64-5 at 8 (emphasis

13   added to highlight new response).)

14   **Plaintiff's objection**:   "The objection is frivolous and must

15   be stricken; the Court has ordered defendant to respond on the

16   merits.   Furthermore, large portions of the deposition cited (pp

17   174-207) are non-responsive and far too broad.   Defendant must

18   specify the relevant, responsive portions."   (<u>Id.</u>)

19   **The Court's ruling:**   The Court will not compel the County to

20   engage in the rote exercise of further identifying the exact portion

21   of Kluge's deposition.   Plaintiff has equal access to the deposition

22   transcript.   Moreover, the nature of this interrogatory's subject

23   matter makes it much more suited for exploration during a deposition,

24   which Plaintiff has taken.

25       4.   <u>San Diego County, Special Interrogatory No. 19</u>

26   **Plaintiff propounded the following interrogatory**: "State all

27   facts concerning YOUR knowledge or understanding of whether BARONA

28

1   (including its management or employees) made audio or visual tapes

2   or recordings of any aspect of the INCIDENT and what became of them.

3   Include the following:

4          (a) IDENTIFY each tape or recording made (including who

5          or what was being taped or recorded);

6          (b) State how and when YOU became knowledgeable of each

7          tape or recording;

8          (c) State whether and when YOU heard or saw each tape or

9          recording;

10         (d) State whether and when YOU obtained a copy of each

11         tape or recording;

12         (e) IDENTIFY each PERSON who has knowledge of each tape

13         or recording;

14         (f) State the current location of each tape or recording;

15         and

16         (g) State whether each tape or recording has been

17         destroyed and, if so: (1) the date of its destruction;

18         (2) the reason for its destruction; (3) the IDENTITY of

19         the PERSON who destroyed it; and (4) DESCRIBE any

20         retention policy directing its destruction."

21  (Doc. No. 64-5 at 7-8.)

22         **Defendant San Diego County's first response**:   "Objection.

23  This interrogatory seeks information not in the custody of or

24  control of this responding party." (Id.)

25         **The Court previously ordered**:  "DEFENDANT IS COMPELLED TO

26  PROVIDE A FURTHER RESPONSE. Defendant shall provide an amended

27  response so that Plaintiff may ascertain Defendant's knowledge of

28  any videotapes or recordings of the incident." (Doc. No. 59 at 4.)

1          **San Diego County's second response**:   "The department never

2   had any tapes.  Sgt. Robert Haley contacted the casino to inquire

3   about tapes on March 9, 2007 and was advised by Security Supervisor

4   Joe Martin that they did not save the tapes."  (Doc. No. 64-5 at 9.)

5          **Plaintiff's objection**:  "The response is way too narrow and

6   intentionally evasive; i.e., it does not come close to 'stat[ing]

7   all facts' of which the defendant is knowledgeable, as required.

8   For instance, there is a witness identified in the Internal Affairs

9   File who was interviewed at length by defendant representative Sgt.

10  Haley on this very issue!  The response establishes that [D]efendant

11  is  attempting  to  coverup  [sic]  its  full  knowledge  of  the

12  tapes/recordings of the INCIDENT.  The ability to respond fully and

13  properly to each subsection of the interrogatory is well within the

14  control of defendant."  (Id.)

15         **The Court's ruling:**  San Diego County shall not be compelled

16  to  further  respond.   Its  response  is  neither  evasive  nor  non-

17  responsive.  The County represents that it never had custody of any

18  video tapes and was told that Barona, an entity not affiliated with

19  the  County,  does  not  save  the  tapes.   Nonetheless,  Plaintiff

20  essentially accuses the County of lying, covering up evidence, and

21  demands that the County provide a truthful response.  The Court, of

22  course, has no way of knowing whether the County is lying.  All the

23  Court has is the County's verified response pursuant to Rule 11,

24  coupled with Plaintiff's implication, based on his personal belief,

25  that  the  County  is  lying.   The  Court  finds  that  the  County's

26  representations are acceptable and responsive given that it was not

27  responsible for creation of any alleged tape *ab initio*.

28

1    Moreover, the County is not the correct entity to which
2    inquiry into this subject matter should be directed.  As just one
3    demonstrative example, Plaintiff demands that <u>the County</u> provide
4    <u>Barona's</u> retention policy.  Barona Casino, an autonomous entity that
5    is separate and distinct from the County, controlled the premises,
6    all videographic equipment, all technical knowledge, and any alleged
7    tapes used to surveil Plaintiff during the subject incident.  As a
8    result, Barona, not the County, is the entity with the most knowledge
9    on this interrogatory's subject matter.

10        **5.   <u>San Diego County, Special Interrogatory No. 22</u>**

11        **Plaintiff propounded the following interrogatory**: "As of
12   August 8, 2006, DESCRIBE all of the policies and procedures of the
13   San Diego County Sheriff's Department with regard to its deputies'
14   investigation of a suspected trespass, including those situations
15   wherein an individual fails to leave a property at the request of
16   either the property owner or a law-enforcement [sic] officer."
17   (Doc. No. 64-5 at 13.)

18        **Defendant San Diego County's first response**:  "Objection:
19   vague and ambiguous; overbroad; calls for information not relevant
20   to the subject matter of this action nor reasonably calculated to
21   lead to the discovery of admissible evidence."  (<u>Id.</u>)

22        **The Court previously ordered**:  "DEFENDANT IS COMPELLED TO
23   PROVIDE A FURTHER RESPONSE. Defendant shall provide Plaintiff with
24   information encompassed in various correspondence regarding the
25   existence of policies regarding suspected trespass."  (Doc. No. 59
26   at 4.)

27        **San Diego County's second response**:  "Objection: vague and
28   ambiguous; overbroad; calls for information not relevant to the

subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Such policies and procedures have already been provided to Plaintiff by letter dated January 10, 2010, as set forth below:

This is a summary of Plaintiff's requests and documents produced.

(1)  Use of force:  2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(2)  Use of restraint:  2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(3)  Use of handcuffs:  2.49 and 6.48; Use of Force Addendum 'F'

(4)  Detaining an individual:  2.48 and 2.51

(5)  Search & seizure:  2.51

(6)  Handling/investigating a citizen's arrest:  6.110

(7)  Penal Code § 602 suspects and investigations:  No policy exists

(8)  Penal Code § 602 letters:  No policy exists

(9)  Handling/investigating a suspect/individual who refuses to leave a property/premises when asked by its owner/employees/[S]heriff's [D]eputies to leave:  No policy exists

(10)  Use and preparation of 'CAD' printout ([a.k.a.] 'Unit History') dispositions ([a.k.a.] 'comments'), including: (a) when, why and how a deputy is supposed to provide a CAD disposition; and (b) what information is supposed to be included in a CAD disposition:  No policy exists

1   (11) Requirements re the preparation of written reports

2   (other than a CAD disposition) by a [S]heriff's [D]eputy

3   (e.g., when an incident report is required, etc.):  2.41

4   and 6.71

5   (12) Taping a suspect or detainee (including but not

6   limited to (a) the rights of the individual; (b) the use

7   of the tape; and (c) the preservation of the tape): 6.105

8   (13) Documenting the following:  2.41, 6.71

9       (a)  Investigations/evaluations  that  result  in

10      arrest:  6.71

11      (b)  Investigations/evaluations that do not result

12      in arrest:  6.71

13      (c) [C]riminal activity:  6.71

14      (d) [S]uspected criminal activity: No policy exists

15      (e) [U]se of force:  2.49 and 6.48; Use of Force

16      Addendum 'F' dated 1/5/06

17      (f) [U]se of physical contact:  2.49 and 6.48; Use

18      of Force Addendum 'F' dated 1/5/06

19      (g) [U]se of handcuffs:  2.49 and 6.48; Use of

20      Force Addendum 'F' dated 1/5/06

21      (h) [U]se of restraint [sic]:  2.49 and 6.48; Use

22      of Force Addendum 'F' dated 1/5/06

23      (i) [C]itizen's arrests:  6.110

24      (j) [D]etaining an individual:  2.48 and 2.51

25      (k) [S]earches and/or seizures:  2.51

26      (l)  W&I  Code  §  5150  investigations/evaluations:

27      6.32, 6.113

28      (m)  Penal  Code  §  602  investigations/evaluations:

1        6.32, 6.113

2        (n) [S]uspected trespassing:  No policy exists

3        (o) [D]uties of deputy in training:  10.1-10.4,

4        10.6, 10.9

5        (p) [T]he taping of a suspect or detainee:  6.105

6 (Doc. No. 64-5 at 13-15.)

7     **Plaintiff's objection**:  "The objections are frivolous and

8 must be stricken; the Court has ordered defendant to respond on the

9 merits.  Furthermore, pursuant to the Order, respondent was to

10 provide 'information' regarding the specific training encompassed in

11 the various referenced policies and procedures, not just a verified

12 summary of the documents produced."  (<u>Id.</u> at 15.)

13     **The Court's ruling:**  The County shall not be compelled to

14 further respond.  The County has represented that it has produced a

15 long list of documents that evidence the relevant policies and

16 procedures.  The County is not required to re-write those materials

17 in narrative format simply because Plaintiff mandates so.  The

18 information exists in written form, and it would be unreasonable and

19 unduly burdensome to require the County to re-write it.  The Court

20 accepts the County's representation that it has produced these

21 documents to Plaintiff.  No further response to this interrogatory

22 is necessary.

23        **6.   <u>Garrett, Special Interrogatory No. 6</u>**

24     **Plaintiff propounded the following interrogatory**:  "Do YOU

25 contend that on August 8, 2006, PAUL BASHKIN refused to leave BARONA

26 at the request of either its owner(s) or law-enforcement [sic]

27 officer?  If so, state each and every fact that supports YOUR

28 contention."  (Doc. No. 64-4 at 4.)

             08CV1450

1      **Defendant Garrett's first response**: "Yes. We were advised

2 that he had refused to leave the casino after a request by casino

3 security and he had threatened suicide." (<u>Id.</u>)

4      **The Court previously ordered**: "DEFENDANT IS COMPELLED TO

5 PROVIDE A FURTHER RESPONSE. Defendant must provide a more detailed

6 response to allow Plaintiff to ascertain specific details surround-

7 ing the incident." (Doc. No. 59 at 5.)

8      **Garrett's second response**: "Yes. He was given an expulsion

9 letter by a casino employee and became more upset. Deputy Kluge

10 told him if he remained on the property he could be arrested for

11 trespass. Plaintiff continued to make demands for return of his

12 money and for free food. Kluge spent some time persuading him to

13 leave voluntarily." (Doc. No. 64-4 at 4.)

14      **Plaintiff's objection**: "The response does not state 'each

15 and every fact' that supports respondent's contentions; i.e., it is

16 in violation of the court order that '[d]efendant must provide a

17 more detailed response." For instance: how does the respondent

18 know that BASHKIN was 'given an expulsion letter by a casino

19 employee'; who was the 'casino' employee'; what were the specific

20 'demands' that BASHKIN allegedly made; how did Kluge 'persuade'

21 BASHKIN to leave voluntarily? Further, respondent states that

22 BASHKIN 'became **more** upset' - 'became **more** upset' than what?

23 Respondent has not set forth any fact establishing that BASHKIN was

24 upset in the first place. Moreover, a portion of this response -

25 regarding BASHKIN leaving 'voluntarily' - contradicts respondent's

26 Response to Interrogatory No. 9, wherein respondent states BASHKIN

27 'refused to leave the premises after being requested numerous times

28 to leave.'" (<u>Id.</u> at 4-5.)

1     **The Court's ruling:**  No further responses shall be ordered.
2  While Plaintiff attempts to spin the Court's own words in his favor,
3  the "failure" to provide "each and every fact" is <u>not</u> a violation of
4  the Court's order to provide a "more detailed" response.  Given that
5  Plaintiff has now had an opportunity to take depositions, which
6  afforded him the opportunity to explore this subject in depth,
7  Garrett's second response is sufficiently responsive and Plaintiff's
8  interrogatory is effectively redundant.  See <u>Johnson v. Couturier</u>,
9  261 F.R.D. 188, 192 (E.D. Cal. 2009).  Moreover, since Plaintiff
10 seeks Garrett's recollection of events, this question is more
11 appropriately posed during deposition than through written discovery.
12 See <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1297 (9th Cir. 1993).

13        **7.  <u>Garrett, Special Interrogatory No. 9</u>**

14        **Plaintiff propounded the following interrogatory:**  "Did YOU
15 WITNESS PAUL BASHKIN violate any laws on August 8, 2006.  If so,
16 respond as follows:

17     (a) State the specific law(s) that he violated;

18     (b) DESCRIBE how he violated the law; and

19     (c) IDENTIFY all MATERIAL that supports this contention."
20 (Doc. No. 64-4 at 5.)

21        **Defendant Garrett's first response:**  "(a) Penal Code section
22 602.1.   (b) He interfered with the casino by obstructing or
23 intimidating the staff and refused to leave the premises after being
24 requested to leave by casino staff.  (c) Casino incident report."
25 (<u>Id.</u>)

26        **The Court previously ordered:**  "DEFENDANT IS COMPELLED TO
27 PROVIDE A FURTHER RESPONSE.  The request is limited in scope to
28 Defendant's reasonable suspicion to believe that he observed

1   Plaintiff violate a law on August 8, 2006, and what facts he

2   observed that lead to this belief, if any." (Doc. No. 59 at 4.)

3       **Garrett's second response**: "(a) Trespass (b) Deputy Kluge

4   and I were advised by casino staff that Plaintiff had interfered

5   with the casino by threatening suicide. He was given an expulsion

6   letter by security after which he refused to leave the premises

7   after being requested numerous times to leave. (c) Casino incident

8   report, expulsion letter." (Doc. No. 64-4 at 5-6.)

9       **Plaintiff's objection**: "The interrogatory is solely

10  concerned with what respondent WITNESSED; e.g., what he 'observed.'

11  In the Special Interrogatories propounded on Garrett, 'WITNESSED' is

12  defined as follows: '"WITNESSED" means, see and hear or saw or

13  heard.' The first sentence of respondent's response to subsection

14  (b) refers to events not WITNESSED by respondent. If respondent

15  WITNESSED the events set forth in the second sentence of his

16  response to subsection (b), then he must properly 'DESCRIBE' them,

17  as that term is defined in the Special Interrogatories propounded on

18  Garrett:

19          'DESCRIBE' means, provide the following information, to
    the extent known, with respect to the act, transaction

20          or tangible thing: (a) the date it occurred; (b) the
    place where it occurred; (c) the IDENTITY of each

21          participant and on whose behalf the participant was
    acting; (d) the nature and substance of all communica-

22          tions that occurred in connection with it; and (e) the
    IDENTITY of all MATERIAL referring to or reflecting it.

23

24      Finally, respondent has failed to respond properly to

25  subsection (c), by failing to properly IDENTIFY the purported

26  'expulsion letter,' relied upon in his response. In the Special

27

28

1   Interrogatories propounded on Garrett, 'IDENTIFY' is defined as

2   follows:

3         'IDENTIFY' OR 'IDENTITY' means, with respect to a
          PERSON: (a) the PERSON's full name; (b) present or last
4         known address; (c) telephone number; and (d) the present
          or last known place of employment and job title refer-
5         ring to a natural person.  With respect to a MATERIAL:
          (a) the type of MATERIAL; (b) the general subject matter
6         of the MATERIAL; (c) the date of the MATERIAL; (d) the
          name and addresses of the authors and recipients of the
7         MATERIAL; (e) the location of the MATERIAL; (f) the
          IDENTITY of the PERSON who has possession or control of
8         the MATERIAL; and (g) whether the MATERIAL has been
          destroyed and, if so, (1) the date of its destruction,
9         (2) the reason for its destruction, (3) the IDENTITY of
          the PERSONS who destroyed it, and (4) any retention
10        policy directing its destruction."

11   (Id. at 6 (emphasis omitted).)

12        **The Court's ruling:**  No further response shall be ordered.

13   Garrett has identified a criminal statute in response to whether he

14   witnessed Plaintiff commit a crime.  To the extent that Plaintiff

15   seeks a narrative of Garrett's recollection of what he witnessed,

16   Plaintiff has had the opportunity to take depositions to thoroughly

17   explore this topic.

18        **8.   Garrett, Special Interrogatory No. 11**

19        **Plaintiff propounded the following interrogatory:**  "Based on

20   what you WITNESSED, DESCRIBE how the INCIDENT occurred."  (Doc. No.

21   64-4 at 7.)

22        **Defendant Garrett's first response:**  "See response to

23   Interrogatory No. 1."  (Id.)

24        **The Court previously ordered:**  "DEFENDANT IS COMPELLED TO

25   PROVIDE A FURTHER RESPONSE.  Defendant must provide more details

26   regarding his observation of the incident.  If the answer to

27   Interrogatory 9 is sufficiently detailed, Defendant may reference

28   that response in his answer."  (Doc. No. 59 at 5.)

08CV1450

1      **Garrett's second response**:  "Deputy Kluge and I were advised

2  by casino staff that Plaintiff had interfered with the casino by

3  threatening suicide.  He refused to leave the premises after he was

4  given an expulsion letter by security after being requested to leave

5  numerous times.  My complete statement to Internal Affairs and the

6  Report have been provided to Plaintiff and my statement is summa-

7  rized in the report at pp. 24-27."  (Doc. No. 64-4 at 7.)

8      **Plaintiff's objection**:  "First, the response is in violation

9  of the court order that '[d]efendant must provide more de-

10 tails. . . .'  The few details actually provided are sketchy and

11 conclusory at best.  Second, only the description of what respondent

12 actually WITNESSED is relevant; i.e., 'his observation of the

13 INCIDENT.'  Everything else is non-responsive and must be

14 stricken/deleted.  Third respondent cannot incorporate by reference

15 his 'complete statement to Internal Affairs,' given that:  (a) the

16 Internal Affairs File only contains a summary of that statement; (b)

17 it has not been authenticated or properly incorporated into his

18 response; and (c) the court order did not allow him to do this.

19 Finally, what 'Report' is being referenced by Garrett?"  (<u>Id.</u>)

20      **The Court's ruling:**  No further response shall be ordered.

21 As previously explained in this Order, Plaintiff again seeks a

22 narrative account of the entire incident, which is an exercise more

23 suited for depositions, which Plaintiff has conducted.

24      **9.   <u>Garrett, Special Interrogatory No. 15</u>**

25      **Plaintiff propounded the following interrogatory**:  "Please

26 DESCRIBE each and every policy or procedure of the San Diego County

27 Sheriff's Department, with regard to how one of its deputies is

28 supposed to handle a situation wherein an individual fails to leave

1   a property at the request of either the property owner or law-

2   enforcement [sic] officer." (Doc. No. 64-4 at 9.)

3       **Defendant Garrett's first response**: "Objection. The request

4   is vague and ambiguous, overbroad and unlimited in scope. Without

5   waiving the objection, a law enforcement officer may arrest an

6   individual who fails to leave after a request by the property owner

7   and a law enforcement officer." (<u>Id.</u>)

8       **The Court previously ordered**: "DEFENDANT IS COMPELLED TO

9   PROVIDE A FURTHER RESPONSE. Defendant shall provide a response that

10  details his knowledge of the requested policies and procedures."

11  (Doc. No. 59 at 5.)

12      **Garrett's second response**: "Objection: vague and ambiguous;

13  overbroad; calls for information not relevant to the subject matter

14  of this action nor reasonably calculated to lead to the discovery of

15  admissible evidence. Such policies and procedures have already been

16  provided to Plaintiff by letter dated January 10, 2010, as set forth

17  below:

18      This is a summary of Plaintiff's requests and documents

19  produced.

20      (1) Use of force:  2.49 and 6.48; Use of Force Addendum

21      'F' dated 1/5/06

22      (2)  Use of restraint:   2.49 and 6.48;  Use of Force

23      Addendum 'F' dated 1/5/06

24      (3) Use of handcuffs:  2.49 and 6.48; Use of Force

25      Addendum 'F'

26      (4) Detaining and individual: 2.48 and 2.51

27      (5) Search & seizure:  2.51

28      (6) Handling/investigating a citizen's arrest:  6.110

(7) Penal Code § 602 suspects and investigations:   No policy exists

(8) Penal Code § 602 letters:   No policy exists

(9)  Handling/investigating  a  suspect/individual  who refuses to leave a property/premises when asked by its owner/employees/[S]heriff's [D]eputies to leave:   No policy exists

(10) Use  and  preparation  of  'CAD'  printout  ([a.k.a.] 'Unit  History')  dispositions  ([a.k.a.]  'comments'), including: (a) when, why and how a deputy is supposed to provide a CAD disposition; and (b) what information is supposed to be included in a CAD disposition:   No policy exists

(11) Requirements re the preparation of written reports (other than a CAD disposition) by a [S]heriff's [D]eputy (e.g., when an incident report is required, etc.):   2.41 and 6.71

(12) Taping  a  suspect  or  detainee  (including but not limited to (a) the rights of the individual; (b) the use of  the  tape;  and  (c)  the  preservation  of  the  tape): 6.105

(13) Documenting the following:   2.41, 6.71

    (a)  Investigations/evaluations  that  result  in arrest:   6.71

    (b)  Investigations/evaluations that do not result in arrest:   6.71

    (c) [C]riminal activity:   6.71

(d) [S]uspected criminal activity:  No policy exists

(e) [U]se of force:   2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(f) [U]se of physical contact:   2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(g) [U]se of handcuffs:   2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(h) [U]se of restraint [sic]:   2.49 and 6.48; Use of Force Addendum 'F' dated 1/5/06

(i) [C]itizen's arrests:   6.110

(j) [D]etaining an individual:   2.48 and 2.51

(k) [S]earches and/or seizures:   2.51

(l) W&I Code § 5150 investigations/evaluations: 6.32, 6.113

(m) Penal Code § 602 investigations/evaluations: 6.32, 6.113

(n) [S]uspected trespassing:  No policy exists

(o) [D]uties of deputy in training:   10.1-10.4, 10.6, 10.9

(p) [T]he taping of a suspect or detainee:   6.105

(Doc. No. 64-4 at 9-10.)

**Plaintiff's objection**:  "The objection is frivolous and must be stricken; the Court has ordered [D]efendant to respond on the merits.   Furthermore, pursuant to the Order, respondent was to provide 'a response that details his knowledge of the requested policies and procedures,' not a summary of the documents produced." (<u>Id.</u> at 11.)

1    **The Court's ruling:**  No further response shall be ordered.
2  As previously explained, this interrogatory again seeks a narrative
3  re-creation of policies and procedures that exist in print format.

4    Moreover, buried within Garrett's response is his representa-
5  tion that such policies do not exist.  (<u>See</u> Garrett's second response
6  at subsections (7), (8), and (9).)  This representation is responsive
7  to Plaintiff's interrogatory.

8      **10.  <u>Garrett, Special Interrogatory No. 21</u>**

9    **Plaintiff propounded the following interrogatory**:  "Please
10 state if YOU WITNESSED HOWARD KLUGE detain PAUL BASHKIN on August 8,
11 2006? [sic] If so, DESCRIBE what YOU witnessed in conjunction with
12 each act."  (Doc. No. 64-4 at 12.)

13   **Defendant Garrett's first response**:  "I observed a 5150
14 evaluation and Mr. Bashkin being escorted out of the casino where he
15 elected to leave on a bus."  (<u>Id.</u>)

16   **The Court previously ordered**:  "DEFENDANT IS COMPELLED TO
17 PROVIDE A FURTHER RESPONSE. Defendant must provide the specific
18 details he witnessed, as far as his memory permits."  (Doc. No. 59
19 at 6.)

20   **Garrett's second response**:  "I observed a 5150 evaluation and
21 Mr. Bashkin being escorted out of the casino where he elected to
22 leave on a bus.  Everything I witnessed is contained in the
23 statement I gave to Internal Affairs which has been provided to
24 Plaintiff.  My complete statement to Internal Affairs and the IA
25 Report have been provided to Plaintiff and my statement is summa-
26 rized at pp. 24-27."  (Doc. No. 64-4 at 12.)

27   **Plaintiff's objection**:  "First, the response is non-respon-
28 sive to the first critical part of the interrogatory; it fails to

1   state whether respondent 'WITNESSED HOWARD KLUGE detain PAUL BASHKIN

2   on August, 8, 2006." Second, the response is in violation of the

3   court order that '[D]efendant must provide the specific details he

4   witnessed[, as far as his memory permits].'   The few details

5   actually provided are sketchy and conclusory at best.   Third,

6   respondent cannot incorporate by reference his 'complete statement

7   to Internal Affairs,' given that: (a) the IA Report only contains a

8   summary of that statement; (b) it has not been authenticated or

9   properly incorporated in his response; and (c) the court order did

10  not permit him to do this." (Id.)

11       **The Court's ruling:**   No further response shall be ordered.

12  Although the Court agrees with Plaintiff that Garrett's second

13  response lacks detail, Plaintiff nonetheless again seeks a narrative

14  account of what someone witnessed, which written discovery is ill-

15  suited to elicit.   Plaintiff has had the opportunity to take

16  depositions and has in fact done so.

17       **11.  <u>Garrett, Special Interrogatory No. 24</u>**

18       **Plaintiff propounded the following interrogatory**: "IDENTIFY

19  all previous complaints or lawsuits that have been made or filed

20  against YOU in the last ten years.   Include the following:

21       (a) IDENTIFY the parties to those complaints or lawsuits;

22       (b) Set forth the court, case number, date and caption;

23       (c) Whether the complaint or lawsuit was based on facts

24       leading to an arrest;

25       (d) The name, address, and telephone number of any attorney

26       representing any of the parties to those complaints or

27       lawsuits;

28       (e) Whether the claim or action has been resolved or is

1    pending, and if resolved, its outcome; and

2       (f) A description of the claimed injuries.

3    (Doc. No. 64-4 at 14.)

4       **Defendant Garrett's first response**: "Objection: The requests

5    [sic] seeks inadmissible evidence of complaints involving incidents

6    after the subject incident involving the plaintiff; seeks privileged

7    information pertaining to personnel and internal affairs matters in

8    a manner in violation of California Penal Code § 832.7 and Evidence

9    Code § 1043; seeks disclosure of official information acquired in

10   confidence per Evidence Code § 1040; disclosure of personnel,

11   medical and similar files is an unwarranted invasion of personal

12   privacy impermissible under the Freedom of Information act;

13   information sought is protected from the disclosure under the

14   provisions of the Federal Privacy Act; seeks records and information

15   compiled for law enforcement purposes which are exempt from

16   disclosure because production could constitute an unwarranted

17   invasion of privacy; seeks non-discoverable and inadmissible

18   information pertaining to disciplinary recommendations; seeks

19   information reflecting advisory opinions, consultations, recommenda-

20   tions and deliberations from disclosure by the deliberative process

21   privilege; seeks information not relevant to the subject matter of

22   this action nor reasonably calculated to lead to the discovery

23   admissible evidence.  Without waiving these objection, and to the

24   extent this request seeks the identity of lawsuits in which

25   propounding party is a named defendant, that information is equally

26   available to all parties." (Id.)

27      **The Court previously ordered**: "Plaintiff's interrogatory as

28   posed is over broad.  Defendant shall provide an amended response

1  regarding any lawsuit involving excessive force, unlawful search and

2  seizure, or trespass, from the date of his first employment as a

3  deputy to the present date." (Doc. No. 59 at 6.)

4       **Garrett's second response**: "Objection: The requests [sic]

5  seeks inadmissible evidence of complaints involving incidents after

6  the subject incident involving the plaintiff; seeks privileged

7  information pertaining to personnel and internal affairs matters in

8  a manner in violation of California Penal Code § 832.7 and Evidence

9  Code § 1043; seeks disclosure of official information acquired in

10  confidence per Evidence Code § 1040; disclosure of personnel,

11  medical and similar files is an unwarranted invasion of personal

12  privacy impermissible under the Freedom of Information act;

13  information sought is protected from the disclosure under the

14  provisions of the Federal Privacy Act; seeks records and information

15  compiled for law enforcement purposes which are exempt from

16  disclosure because production could constitute an unwarranted

17  invasion of privacy; seeks non-discoverable and inadmissible

18  information pertaining to disciplinary recommendations; seeks

19  information reflecting advisory opinions, consultations, recommenda-

20  tions and deliberations from disclosure by the deliberative process

21  privilege; seeks information not relevant to the subject matter of

22  this action nor reasonably calculated to lead to the discovery

23  admissible evidence.  Without waiving these objection, <u>none</u>

24  <u>involving excessive force[,] unlawful search and seizure[,] or</u>

25  <u>trespass</u>." (Doc. No. 64-4 at 15 (emphasis added to highlight new

26  response).)

27

28

1    **Plaintiff's objection**: "The objections are frivolous,

2  invalid and must be deleted; the Court has ordered [D]efendant to

3  respond on the merits." (<u>Id.</u>)

4    **The Court's ruling:** No further response shall be ordered.

5  Garrett's second response ("<u>[N]one</u> involving excessive force[,]

6  unlawful search and seizure[,] or trespass." (emphasis added)) is

7  responsive and complies with the Court's prior Order ("Defendant

8  shall provide an amended response regarding any lawsuit involving

9  excessive force, unlawful search and seizure, or trespass . . . .").

10    **12.  <u>Kluge, Interrogatory No. 6</u>**

11    **Plaintiff propounded the following interrogatory**: "In

12  response to Category No. 6 of BASHKIN's request for production of

13  documents, YOU produced a photographic copy of a wall containing a

14  sign or notice stating that: 'THIS ROOM IS BEING MONITORED BY AUDIO

15  SURVEILLANCE'. State whether that sign or notice was on the wall of

16  the BARONA holding room in which BASHKIN was detained during the

17  INCIDENT." (Doc. No. 64-4 at 5.)

18    **Defendant Kluge's response**: "I provided no photographic copy

19  of a wall containing a sign or notice stating: 'THIS ROOM IS BEING

20  MONITORED BY AUDIO SURVEILLANCE.' If such a photographic copy was

21  produced, it was provided to Mr. Bashkin by Mr. James Chapin who is

22  my attorney in this matter. I have no knowledge of this sign or if

23  it's even located on the Barona Casino property." (<u>Id.</u>)

24    **Plaintiff's objection**: "The response is frivolous, evasive

25  and non-responsive on multiple counts. First, 'YOU' was defined in

26  the interrogatories as <u>including 'YOUR attorney</u>.' Second, discovery

27  is answered or responded to by party, not their attorney. Third,

28  the knowledge of the attorney is imputed to and/or controlled by his

1   client.    Bashkin  is  in  receipt  of  'Defendant  Howard  Kluge's

2   Responses  to  Requests  to  Production  Attached  to  the  Notice  of

3   Deposition,'  wherein  Kluge  responded  that  he  'produced'  that

4   photographic  copy.   Thus,  Kluge's  testimony  denying  having  provided

5   the  'photographic  copy'  is  a  misrepresentation  of  a  material  fact;

6   i.e.,  perjury.   Kluge,  through  his  attorney,  produced  a  'photo-

7   graphic  copy'  being  sought  in  the  interrogatory  and,  therefore,  he

8   must  respond  on  the  merits  with  the  information  that  he  controls

9   through  his  attorney  and  is  in  the  possession  of  either  he  or  his

10  attorney."   (Id. (emphasis  in  original).)

11      **The Court's ruling:**   KLUGE IS ORDERED TO RESPOND TO THIS

12  INTERROGATORY IN GOOD FAITH.   Whether Kluge produced the sign, or his

13  attorney  produced  it  on  his  behalf,  is  immaterial.   The  essence  of

14  the  interrogatory  is  whether  Kluge  recalls  such  a  sign  being  present

15  in  the  holding  room.   If  Kluge  did  not  produce  the  photograph  and

16  another  party  did,  he  should  state  so,  but  should  nonetheless  state,

17  as  his  memory  permits,  whether  he  recalls  the  sign's  presence  in  the

18  holding  room  on  the  day  in  question.

19      **13.  Kluge, Interrogatory No. 13**

20      **Plaintiff propounded the following interrogatory**:  "State all

21  facts  regarding  how  YOU  came  into  possession  of  the  copy  of  the

22  'casino  expulsion  letter'  that  YOU  produced  to  BASHKIN  in  response

23  to  BASHKIN's  request  for  production  of  documents."   (Doc.  No.  64-3

24  at  9.)

25      **Defendant Kluge's response**:   "I  did  not  produce  a  'Casino

26  Expulsion  Letter'  to  Mr.  Bashkin.   The  item  was  produced  by  Mr.

27  James  Chapin[,]  my  attorney  in  this  matter.   I  have  no  knowledge  as

28  to  how  the  item  came  into  the  possession  of  Mr.  Chapin."   (Id.)

1    **Plaintiff's objection**:  "The response is frivolous, evasive

2    and non-responsive on multiple counts.  First, 'YOU' was defined in

3    the interrogatories as <u>including 'YOUR attorney</u>.'  Second, discovery

4    is answered or responded to by party, not their attorney.  Third,

5    the knowledge of the attorney is imputed to and/or controlled by his

6    client.  Bashkin is in receipt of Kluge's responses to his requests

7    to production of documents wherein Kluge responded that 'the Casino

8    Expulsion Letter will be produced.'  He subsequently produced it.

9    Thus, Kluge's testimony denying having provided the 'Casino

10   Expulsion Letter' is a misrepresentation of a material fact; i.e.,

11   perjury.  Kluge, through his attorney, produced a 'Casino Expulsion

12   Letter' being sought in the interrogatory and, therefore, he must

13   respond on the merits with the information that he controls through

14   his attorney and is in the possession of either he or his attorney."

15   (<u>Id.</u> (emphasis in original).)

16   **The Court's ruling**:  For the same reasons articulated in the

17   Court's ruling on Kluge Interrogatory No. 6, immediately above, KLUGE

18   IS ORDERED TO RESPOND TO THIS INTERROGATORY IN GOOD FAITH.  If he has

19   no knowledge of the expulsion letter, he should state so.

20       **14.  <u>Kluge, Interrogatory No. 14</u>**

21       **Plaintiff propounded the following interrogatory**:  "State all

22   facts supporting YOUR suspicion or belief that BASHKIN was trespass-

23   ing when he did not immediately leave BARONA upon his receipt of the

24   BARONA 'expulsion letter.'"  (Doc. No. 64-3 at 9.)

25       **Defendant Kluge's response**:  "Mr. Bashkin was given both

26   written and verbal notification that he was no longer allowed on the

27   Barona Casino property by Mr. George Denny and myself, therefore Mr.

28   Bashkin was clearly informed that if he remained at the location or

came back to the property in the future he would be violating trespassing laws in the California Penal Code book.  Based on the fact Mr. Bashkin was given these very clear and lawful orders to vacate the casino property[,] I believed Mr. Bashkin would have been violating the trespassing laws in the California Penal Code if he didn't leave the casino property during the incident." (<u>Id.</u> at 10.)

**Plaintiff's objection**:  "Respondent did not state 'all' of the facts, and those facts provided were conclusory.  If the 'orders' Bashkin was given were 'very clear,' certainly the responsive facts in support thereof are not.  What was the 'verbal and written' notification that Bashkin was allegedly given?  Was Bashkin actually 'informed that if he remained at the location or came back to the property in the future he would be violating the trespassing laws in the California Penal Code book,' or is that merely respondent's conclusion?"  (<u>Id.</u>)

**The Court's ruling:**  For reasons explained in detail herein, no further response shall be ordered.

### 15.  <u>Kluge, Interrogatory No. 15</u>

**Plaintiff propounded the following interrogatory**:  "Was the copy of the 'casino expulsion letter' that YOU produced to BASHKIN in response to BASHKIN's request for production of documents[] a true and correct copy of the 'expulsion letter' that George Denny gave BASHKIN at BARONA on August 8, 2006?"  (Doc. No. 64-3 at 10.)

**Defendant Kluge's response**:  "I did not produce a 'Casino Expulsion Letter' to Mr. Bashkin.  The item was produced by Mr. James Chapin[,] my attorney in this matter.  However, I read the letter and it appeared to be the same letter that was given to Mr.

08CV1450

1   Baskin [sic] on August 8, 2005 [sic], but I can't say for sure that

2   is the case." (Id.)

3       **Plaintiff's objection**:  "The first two sentences should be

4   stricken." (Id. at 11.)

5       **The Court's ruling:**  The Court declines Plaintiff's request

6   to "strike" the first two lines of Kluge's response.

7       **16.  Kluge, Interrogatory No. 16**

8       **Plaintiff propounded the following interrogatory**:  "Describe

9   with specificity each and every incident wherein YOU have been

10  accused of using excessive force against an individual in YOUR

11  capacity as a law-enforcement [sic] officer." (Doc. No. 64-3 at

12  11.)

13      **Defendant Kluge's response**:  "Objection: The requests [sic]

14  seeks inadmissible evidence of complaints involving incidents after

15  the subject incident involving the plaintiff; seeks privileged

16  information pertaining to personnel and internal affairs matters in

17  a manner in violation of California Penal Code § 832.7 and Evidence

18  Code § 1043; seeks disclosure of official information acquired in

19  confidence per Evidence Code § 1040; disclosure of personnel,

20  medical and similar files is an unwarranted invasion of personal

21  privacy impermissible under the Freedom of Information act;

22  information sought is protected from the disclosure under the

23  provisions of the Federal Privacy Act; seeks records and information

24  compiled for law enforcement purposes which are exempt from

25  disclosure because production could constitute an unwarranted

26  invasion of privacy; seeks non-discoverable and inadmissible

27  information pertaining to disciplinary recommendations; seeks

28

1   information reflecting advisory opinions, consultations, recommenda-

2   tions and deliberations from disclosure by the deliberative process

3   privilege; seeks information not relevant to the subject matter of

4   this action nor reasonably calculated to lead to the discovery

5   admissible evidence.  Without waiving these objection, a lawsuit

6   alleging excessive force entitled *Kenneth E. Lewis v. County of San*

7   *Diego, Deputy Kluge, Deputy Burke*, Southern District of California,

8   Case No. 04-CV-2592-IEG(RBB), is public record." (Id.)

9        **Plaintiff's objection**: "The response is non-responsive as to

10  the relevance of the *Lewis* lawsuit.  The request seeks a

11  'descri[ption] with specificity' of each '**incident** wherein YOU have

12  been accused of using excessive force.  Therefore, Kluge must

13  'describe with specificity' each and every 'incident' involving an

14  accusation of his 'use of excessive force, exclusive of the

15  accusations contained in the instant action." (Id. at 11-12

16  (emphasis in original).)

17       **The Court's ruling**:  KLUGE IS ORDERED TO FULLY RESPOND AND DO

18  SO IN GOOD FAITH.  As Plaintiff correctly points out, the interroga-

19  tory requests each "incident," not "lawsuit."  This information is

20  relevant to this action, yet Kluge continues to provide incomplete

21  responses.  Kluge shall set for the following for each incident or

22  occasion he was accused of excessive force as a law enforcement

23  officer:  (1) date of accusation; (2) entity to which accusation was

24  made; (3) detailed description of the accusation; and (4) the outcome

25  of investigation, if any.

26       **17.  Kluge, Interrogatory No. 17**

27       **Plaintiff propounded the following interrogatory**:  "Was the

28  copy of the 'expulsion letter' that YOU lodged in support of YOUR

1   motion for summary judgment in this action[] a true and correct copy
2   of the 'expulsion letter' that George Denny gave Bashkin at Barona
3   on August 8, 2006?"  (Doc. No. 64-3 at 12.)

4        **Defendant Kluge's response**:  "This question was asked and
5   answered in my response to question #15 above."  (<u>Id.</u>)

6        **Plaintiff's objection**:  "The response is frivolous, eva-
7   sive[,] and non-responsive.  Special Interrogatory Nos. 15 and 17
8   are materially different.  According to the face page of Exhibit A
9   of Docket #39-3 [Notice of Lodgment of Exhibits in Support of Motion
10  for Summary Judgment], **<u>Kluge</u>** lodged a copy of the 'expulsion letter'
11  in support of his 'motion for summary judgment in this action.'
12  Therefore, he must disclose whether the copy of that letter that he
13  lodged with his Motion was 'a true and correct copy of the 'expul-
14  sion letter' that George Denny gave BASHKIN at BARONA on August 8,
15  2006."  (<u>Id.</u> (emphasis in original).)

16       **The Court's ruling**:  No further response shall be ordered.
17  Kluge Interrogatory Nos. 15 and 17 are nearly identical.  In response
18  to Interrogatory No. 15, Kluge responded that he reviewed the
19  expulsion letter, and it appeared to be the one provided to Plaintiff
20  but he could not be sure if it was the same one.  Kluge's response
21  is essentially, "Maybe.  I do not know for certain," which is an
22  acceptable response if Kluge in fact does not recall.

23       **18.  <u>Kluge, Interrogatory No. 22</u>**

24       **Plaintiff propounded the following interrogatory**:  "Identify
25  with particularity each time YOU documented (e.g., in a report,
26  statement or disposition, etc.) any suspicion or belief YOU had that
27  BASHKIN had violated a trespassing law at BARONA on August 8, 2006."
28  (Doc. No. 64-3 at 14.)

1    **Kluge's response**:  "Mr. Bashkin was given both written and

2    verbal notification[s] that he was no longer allowed on the Barona

3    Casino property by Mr. George Denny and me.  Therefore, Mr. Bashkin

4    was clearly informed that he remained at the location or came back

5    to the property in the future he would be violating the trespassing

6    law(s) in the California Penal Code book.  Based on the fact Mr.

7    Bashkin was given these very clear and lawful orders to vacate the

8    casino property[,] I believed that Mr. Bashkin would have been

9    violating the trespassing law(s) in the California Penal Code if he

10   didn't leave the casino property during this incident.  Mr. Bashkin

11   left the casino property, thus he didn't complete the act of

12   violating any trespassing law(s) at Barona on August 8, 2006."

13   (Id.)

14   **Plaintiff's objection**:  "The response is **frivolous, evasive**

15   **and completely non-responsive!**  At best, it provides 'conclusory'

16   facts regarding Bashkin's alleged potential trespassing, which has

17   nothing to do with the information being sought.  The interrogatory

18   seeks any and all '**documentation**' of Kluge's suspicions or beliefs

19   that Bashkin had 'violated a trespassing law at BARONA on August 8,

20   2006.'  The response even provides examples of what is meant by

21   'document,' yet Kluge still evaded responding on point!  The

22   interrogatory is clear, straightforward and relevant, and Kluge must

23   answer it." (Id. at 15 (emphasis in original).)

24   **The Court's ruling**:  KLUGE IS ORDERED TO RESPOND IN GOOD

25   FAITH.  Kluge's response is completely non-responsive.  As Plaintiff

26   correctly points out, the interrogatory asked about <u>documentation</u> of

27   Kluge's <u>suspicion or belief</u> of Plaintiff's alleged trespass.

28   However, Kluge completely disregards the call of the question and

provides a generic account of the incident without mentioning any documentation whatsoever.  If Kluge did not document the alleged trespass, he should state so.   If he did document the alleged trespass in any way, he should set forth how he documented his suspicion or belief, whether it be on a Field Interview Report, CAD entry, *et cetera*.  However, in no event may Kluge again ignore the actual question Plaintiff poses.

### III.  <u>CONCLUSION</u>

The parties are ORDERED to proceed consistently with this Order as set forth above.  For those interrogatories which the Court has ordered further responses, Defendants are hereby on notice that further incomplete, partially responsive, evasive, or dilatory responses will be unacceptable.  This is now the <u>second</u> Order on certain interrogatories, and Defendants have the benefit of the Court's guidance above.  The Court has observed Defendants withhold information until compelled to reveal it by the Court, and even then do so without much detail.  This practice is unacceptable.  The Court will deem further improper responses as a direct and inten-tional violation of the Court's Order and appropriate sanctions may issue.

IT IS SO ORDERED

DATED:  January 13, 2011

_____
Hon. William V. Gallo
U.S. Magistrate Judge

08CV1450