1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9

10   PAUL BASHKIN,                    )  No. 08-CV-1450-AJB(WVG)
                                      )
11                    Plaintiff,      )  **ORDER DENYING PLAINTIFF'S EX**
                                      )  **PARTE MOTION FOR ADDITIONAL**
12   v.                               )  **LIMITED DISCOVERY**
                                      )
13   SAN DIEGO COUNTY, *et al.*,      )  [DOC. NO. 92]
                                      )
14                    Defendants.     )
                                      )
15   _____ )

16           Plaintiff, proceeding *in pro per*, moves the Court for an

17   order to re-open discovery on a limited basis so that he may explore

18   five enumerated areas.  For the reasons stated below, Plaintiff's

19   motion is DENIED.

20                        I.  **BACKGROUND**

21           Filed on August 8, 2008, this case has involved a long series

22   of hard-fought discovery disputes, with both sides at times behaving

23   below the standard which this Court expects.  Although the deadline

24   to conduct all discovery passed on December 7, 2009, (Doc. No. 16 at

25   1), these disputes nonetheless persisted and culminated in the

26   issuance of a 61-page Order on January 13, 2011, which the Court

27   expected would be the end of the disputes.  (See Doc. No. 83.)  But

28   Plaintiff persists.

1    Plaintiff's present motion comes late in the case, with the

2    final pretrial conference set for May 6, 2011--barely over one month

3    from the date he filed this motion.  (Doc. No. 91.)

4                        III.   **LEGAL STANDARD**

5    Federal Rule of Civil Procedure 16 provides a stringent

6    standard whereby the party who seeks to amend the Court's scheduling

7    order must show "good cause" why the Court should set aside or

8    extend a discovery deadline.  See Fed. R. Civ. P. 16(b)(4).  The

9    scheduling order may only be amended with the Court's consent.  Id.

10    Under Rule 16(b)'s good cause standard, the Court's primary

11    focus is on the movant's diligence in seeking the amendment.

12    Johnson v. Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992).

13    "Good cause" exists if a party can prove the schedule "cannot

14    reasonably be met despite the diligence of the party seeking the

15    extension."  Id. (citing Fed. R. Civ. P. 16 advisory committee's

16    notes (1983 amendment)).  "[C]arelessness is not compatible with a

17    finding of diligence and offers no reason for a grant of relief.

18    Although the existence or degree of prejudice to the party opposing

19    the modification might supply additional reasons to deny a motion,

20    the focus of the inquiry is upon the moving party's reasons for

21    seeking modification."  Id. (citations omitted).  If the party

22    seeking modification was not diligent in his or her pretrial

23    preparations, the inquiry should end there and the measure of relief

24    sought from the Court should not be granted.  Zivkovic v. S. Cal.

25    Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  The party seeking

26    to continue or extend the deadlines bears the burden of proving good

27    cause.  See id.; Johnson, 975 F.2d at 608.

28

08CV1450

### III.   RULINGS

**A.   Special Interrogatory On Plaintiff's Second Claim**

Plaintiff first seeks to propound one special interrogatory to Defendant Kluge.  (Doc. No. 92-2 at 20.)  That interrogatory relates to Plaintiff's second claim for violation of 28 U.S.C. Section 1985.  As Plaintiff correctly recounts, Defendants won summary judgment on this claim in early 2010, and Plaintiff was allowed to amend his Complaint to reinstate this claim in late 2010. The claim's presence in this action became final on January 17, 2011, when Defendants' second motion to dismiss was denied.  In the meantime, Plaintiff explains, he was unable to propound discovery on this claim because it had been dismissed from the suit at the time when he propounded interrogatories to Kluge.[1]  However, as explained below, the Court denies Plaintiff's request for leave to propound the proposed interrogatory.

**1.   The Potential For Significant Delay**

The first two factors that inform the Court's ruling include the fact that this case is swiftly approaching its 3-year anniversary, and allowing further discovery will impact Judge Battaglia's final pretrial conference date.  The Court has had ample experience with how discovery in this case has proceeded, which experience informs the Court on how future discovery will proceed.  Based on the Court's past experience with both sides in this action, the Court is certain that allowing the requested discovery at this late stage will <u>significantly</u> delay this case.  Based on the parties' proven history, Plaintiff will propound his interrogatory, Defen-

---

[1]   The Court previously allowed Plaintiff to propound limited interrogatories to Kluge in lieu of continuing Kluge's deposition. (Doc. No. 59 at 2.)

08CV1450

1  dants will provide either a half-answer or an adequate answer,

2  Plaintiff will pick apart every minute detail of Defendants'

3  response and file an outraged discovery dispute even if the response

4  is wholly adequate, and the Court will referee a dispute process

5  that will likely take months.  All of this will then be followed by

6  motions for reconsideration and follow-up disputes.  As a result,

7  the pretrial conference and ensuing final resolution of this case

8  will very likely be pushed into next year.

9       However, the Court emphasizes that this delay is not the main

10  driving force behind its ruling.  The overwhelming bases for the

11  Courts ruling are (1) the nature of the proposed interrogatory and

12  (2) Plaintiff's inability to meet his burden under Rule 16(b).

13       **2.   <u>Nature of the Proposed Interrogatory</u>**

14       The Court has reviewed Plaintiff's proposed interrogatory and

15  concludes that, as crafted, it will be of little to no additional

16  utility in this case given the nature of both the interrogatory and

17  the Answer.  Plaintiff seeks a wide range of information relating to

18  the Answer's denial of any material allegation or assertion of an

19  affirmative defense.  (Doc. No. 92-2 at 20.)  However, the short

20  Answer contains only general denials and standard affirmative

21  defenses that are equally applicable to all of Plaintiff's claim,

22  not just his second claim, and are the type of standard defenses

23  that are ordinarily intended to preserve issues for a motion to

24  dismiss or for summary judgment.

25       The Answer contains only six affirmative defenses, all of

26  which are standard, routinely-pled defenses, and none are directed

27  at any specific claim.  These affirmative defenses include those

28  that are ordinarily resolved before trial (<u>e.g.</u>, First:  "fails to

allege facts sufficient to state a claim," Fourth:  "the action is barred by the statute of limitations," and Fifth:  Defendants "are entitled to immunity"), and further discovery on these defenses will not advance this case at this stage.  The Second and Third Affirmative Defenses are inapposite because they are alleged by the County only, not Kluge, who is the party to whom the proposed interrogatory is directed.  The Sixth Affirmative Defense ("Defendants alleges [sic] that they acted in good faith") does not apply to Plaintiff's second claim in light of the Answer's general denial in paragraph 3 of every fact alleged in Plaintiff's second claim.  Finally, the only instance where the Answer specifically addresses Plaintiff's second claim is in paragraph 3, which contains only general denials of the facts alleged in the second claim.

The proposed interrogatory thus has very limited utility in light of the nature of the information sought.  Moreover, Plaintiff's request for discovery on his second claim occupies only 12 lines of his *ex parte* motion and does not explain why or how the interrogatory is necessary.  See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994) (In the context of a summary judgment motion:  "We will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, <u>and</u> <u>if the movant can show how allowing additional discovery would have precluded summary judgment</u>.") (emphasis added).  The above discussion is a significant factor in the Court's ruling.

        **3.**   **Plaintiff Has Not Met His Burden to Show "Good Cause"**

Another significant factor in the Court's ruling is the lack of a showing of diligence.  Applying Rule 16(b)'s good cause

standard, Plaintiff has not demonstrated that he has diligently sought to propound this single interrogatory to Kluge and has not explained the delay.

The Court understands the chain of events that previously precluded Plaintiff from propounding this interrogatory. However, Plaintiff should have been certain that his second claim was firmly in this case when Judge Hayes denied Defendants' motion to dismiss on January 17, 2011. Plaintiff should have immediately sought leave to propound the interrogatory rather than wait more than two months, and a month from the final pretrial conference, to do so. In aggravation of this delay, Plaintiff does not explain why he waited to seek leave. In sum, (1) delay exists and (2) no reason for the delay is given. Together, these two facts add up to Plaintiff's failure to meet his burden under Rule 16(b).

Based on the totality of the foregoing considerations, the Court denies Plaintiff's request to propound the proposed interroga-tory.

**B.   <u>Request to Serve "CAD Disposition" Interrogatory To San Diego County</u>**

The "CAD Disposition" dispute centers around Plaintiff's desire to pin down the exact number of characters to which a Deputy Sheriff is limited when he enters notes on a specific incident into his patrol-vehicle-mounted computer. Plaintiff theorizes that Defendants' contention, that their actions against him were justified because he refused to leave Barona Casino, is a post hoc fabrication that can be disproven by reference to the notes Deputy Kluge entered into his patrol vehicle's computer. Specifically, Kluge's notes apparently made no mention that Plaintiff refused to

1    leave the casino.  It follows, Plaintiff argues, that the lack of
2    any mention of his failure to leave Barona is evidence of Defen-
3    dants' post-hoc, fabricated defense.

4         Plaintiff first sought to discover the exact number of
5    characters Kluge could enter into his computer by propounding
6    discovery to Deputy Kluge, asking for the exact character limit.  On
7    November 10, 2010, after some back and forth, Kluge finally
8    responded that he knew there was some sort of character limit but he
9    did not know the exact character limit.  (Doc. No. 80-1 at 11-12,
10   15.)[2]  In its January 13, 2011, Order, the Court concluded that
11   Kluge's response was responsive and Kluge was not the proper party
12   to respond to this interrogatory.  (Doc. No. 83 at 16.)  "I don't
13   know" is a perfectly valid response, and a party cannot be compelled
14   to answer a question to which he does not know the answer.  The
15   Court also concluded that Kluge was not the correct party to respond
16   to this interrogatory because, to the extent that Plaintiff wanted
17   the exact character limitation, Kluge was not best-suited to respond
18   because he was merely the end-user of the CAD program, not the
19   program's inventor, programmer, or an IT professional.  (Doc. No. 83
20   at 16.)  Indeed Plaintiff himself recognized that Kluge "could have
21   easily obtained that information through defendant San Diego County,
22   Kluge's employer and a co-defendant in this lawsuit." (Id. (quoting
23   Plaintiff's argument).)  However, if San Diego County ultimately had
24   the information Plaintiff sought, why was Plaintiff trying to force
25   Kluge to provide information that the County had?  The interrogatory
26   should have been propounded to San Diego County *ab initio*.

27

28   [2]    All page citations to documents on the Court's docket refer to the
        Clerk of Court's renumbering of the document, not the document's
        original pagination.

1     Now, nearly two months after the Court's January 2011 Order,
2  and a month before the final pretrial conference, Plaintiff wishes
3  to propound to San Diego County an interrogatory that asks for the
4  exact character limit to which Kluge was limited when he made his
5  CAD incident notes.  Plaintiff seeks the same information from San
6  Diego County that Kluge could not provide.  He argues that Kluge led
7  him to believe that he was the correct party by agreeing to respond
8  to the interrogatory and stringing him along.

9     However, regardless whether Kluge in fact strung him along,
10  the fact remains that Plaintiff could have simultaneously propounded
11  the same interrogatory to both Kluge and San Diego County when he
12  had the chance to do so.  Instead, it appears that Plaintiff chose
13  to propounded it only to Kluge.  There is no indication that
14  Plaintiff ever propounded this interrogatory onto San Diego County
15  in the past or that anything prevented him from doing so.  Whether
16  Plaintiff did not propound this interrogatory to San Diego County
17  because he believed Kluge was the right party to answer this
18  interrogatory is irrelevant.  Identical interrogatories are
19  routinely propounded to multiple opposing parties in litigation.  If
20  this issue is as important as Plaintiff claims, he should have
21  propounded the interrogatory to San Diego County to extract as much
22  information as he possibly could from all defendants.  If, as it
23  appears, he did not do so, that was his choice alone.

24     The Court finds that Plaintiff has not been diligent in
25  pursuing this discovery, has not explained a credible basis for his
26  lack of diligence, and as a result denies his request to propound
27  this interrogatory to San Diego County.  In sum, Kluge has answered
28  this interrogatory to the extent he could, and San Diego County will

1   not be compelled to respond to this interrogatory on the eve of

2   trial when Plaintiff could have sought San Diego County's response

3   long ago.

4   **C.   Requests Related to Barona Photograph and Expulsion Letter**

5         Plaintiff next seeks leave to serve a document subpoena onto

6   a third party, Barona Resort & Casino.  (Doc. No 92-2 at 30.)  He

7   also seeks to propound a special interrogatory about some of the

8   same documents to San Diego County.  (Id. at 24:15-24)  He seeks

9   documents and information regarding two items:  (1) a photograph

10  that depicts a sign in the room Plaintiff was held and (2) an

11  expulsion letter that was allegedly given to him at the time of the

12  underlying incident.    Plaintiff   asserts   that   these   documents

13  establish Defendants' conspiracy to suborn perjury.    However,

14  Plaintiff does not explain why he seeks these documents now, as it

15  appears Plaintiff knew about them long ago.

16        **1.   The Photograph**

17        Plaintiff   wishes   to   discover   more   information   about   a

18  photograph that Defendants claim depicts a sign on a wall of the

19  room Plaintiff was held in on the night of the underlying incident.

20  (Id. at 24:15-24; 30.)   The sign reads:   "THIS ROOM IS BEING

21  MONITORED BY AUDIO SURVEILLANCE."  (Doc. No. 51-1 at 22.)  A caption

22  under the photograph reads:   "Notice in room where Bashkin was

23  housed."   (Id.)   The photograph itself is not at issue because

24  Defendants have produced it to Plaintiff.   What Plaintiff seeks is

25  detailed information about the photograph's origin:  when it was

26  obtained, who took it, when it was taken, why it was taken, who

27  affixed the caption, et cetera.  (Doc. No. 92-2 at 24.)   He wants

28  this   information   because   he   contends   that   the   information   is

1   "overwhelming evidence of Kluge's perjury (in his deposition [in

2   September 2009], he testified that he had been in that security

3   office 'many times' before), but also damning evidence that Kluge

4   conspired with Barona to destroy the tapes of the [i]ncident, given

5   that Kluge's only defense to that spoliation-of-evidence charge is

6   his professed ignorance of that sign."   (Doc. No. 92-1 at 8.)

7        Plaintiff avers that Defendants have referenced the above-

8   described photograph in their initial disclosures and in Kluge's

9   internal affairs file.  Moreover, the photograph was produced to

10  Plaintiff.   While Plaintiff cites these examples to show that

11  Kluge's story has changed, now contending that he does not have

12  knowledge of this sign, these examples rather establish that

13  Plaintiff has known about the existence of the photograph for a very

14  long time.  Indeed, Plaintiff himself included this photograph as an

15  exhibit to his March 4, 2010, reply to Defendant's summary judgment

16  motion.  (Id.)  However, glaringly absent from the instant motion is

17  any explanation that establishes "good cause" under Rule 16, namely

18  that Plaintiff was diligent in seeking this discovery from Barona.

19  For example, there is no indication that Plaintiff has ever tried to

20  serve such a subpoena in the past, sought leave from the Court to

21  serve it, or that he was prevented in any way from doing either.

22  Plaintiff could have sought this information from Barona after

23  Kluge's deposition in September 2009.  He could have done so after

24  Defendants' initial disclosures.  He could have even done so at any

25  point in 2010.  Plaintiff has known for some time that Defendants

26  claim this sign is located at Barona.

27

28

08CV1450

1    The Court's ruling is further informed by the late stage in

2    these proceedings as explained above.  Ultimately, Plaintiff has not

3    met his burden under Rule 16(b).

4         **2.   Expulsion Letter**

5         Likewise, it appears that Plaintiff has known about the

6    expulsion letter that was allegedly given to him for some time now.

7    He states that Defendants have referenced it in their initial

8    disclosures, produced it to him, and used it in court filings.

9    Plaintiff does not seek production of the letter itself, but rather

10   wishes to obtain background information that will ostensibly prove

11   that the letter is a post hoc fabrication.  He claims that the

12   letter was forged after the night of the incident, was never given

13   to Plaintiff, and used to suborn perjury.  Even Plaintiff is

14   correct,[3] he provides no justification for waiting until the eve of

15   trial to seek this discovery.  Plaintiff's request is denied for the

16   same reasons stated immediately above.

17        The Court further denies Plaintiff's request for the

18   remaining documents in his proposed subpoena to Barona.  (Doc. No.

19   92-2 at 30.)  Plaintiff could have inquired about these subject

20   areas long ago as well.

21

22

23

24   _____

25   [3]   The Court has no opinion whatsoever on this matter and the
          possibility of its truth has no bearing on the Court's decision
26        because such considerations do not have a place in the Rule 16(b)
          good cause analysis under the circumstances here.  While it is
27        conceivable that these facts could be relevant in other cases, for
          example where a party discovers new facts at a late stage in the
28        proceedings, it appears Plaintiff has known about these facts for a
          long time.  In light of Plaintiff's long-standing knowledge, the
          Court's focus is on his diligence.  Had Plaintiff discovered this
          letter a few weeks ago, the Courts analysis might have been
          different.

**D.   Witness Statements Made to Sheriff's Internal Affairs**

Plaintiff demands that Defendants produce hard-copy versions of witness statements given by unknown persons to the Sheriff's Internal Affairs Unit.  In past meet and confer efforts, Defendants apparently agreed to produce summaries of the witness statements as well as the actual statements on a compact disc ("CD").  Plaintiff apparently received the CD but avers that "it cannot be accessed" by him but initially did not explain why he could not access it (e.g., because he does not own a computer, the CD is corrupted, the files on the CD are in a format that will not open on Plaintiff's computer, etc.).  Plaintiff now demands paper copies of whatever is on the CD.

**1.   The Court Ordered Further Briefing**

Upon reviewing Plaintiff's motion, the Court ordered that Defendants specifically respond to various questions the Court had about the CD.  (See Doc. No. 95 (responding to Court's Order, Doc. No. 94).)  The Court also asked Plaintiff to explain why he could not access the CD.  (See Doc. No. 97 (same).)  Defendants responded that the witness statements were audio recordings and were produced to Plaintiff in .wav format, which is a common, widely-used audio format that can be played by a wide variety of free audio players.  For his part, Plaintiff explained:  "Because of irreparable <u>problems with my computer</u> that would not allow me to download any [audio player] program, Chapin agreed to convert the interviews onto a CD that would play on my portable CD player."  (Doc. No. 97 at 2 (emphasis added).)  As Plaintiff further explains, Defense counsel apparently converted only Plaintiff's own interview with Internal

1    Affairs, but did not convert the remaining nine witness or party
2    interviews.

3        **2.   <u>Ruling</u>**

4        Defendants have more than complied with their obligations
5    under the Federal Rules of Civil Procedure.   To the extent that
6    Plaintiff complains that he cannot access the CD, his own explana-
7    tion shows that the problem lies with his own computer equipment,
8    not with the CD Defendants produced.   However, problems with
9    Plaintiff's computer are his alone and do not invoke any obligation
10   on Defendants' part to help him cure those problems.   There is no
11   indication that the CD is corrupted in any way such that Plaintiff's
12   inability to access it was caused by Defendants.   Further, public
13   computers are readily available at any public library, and Plaintiff
14   could have attempted, and still can attempt, to access the CD there.
15   And although it appears that Defendants may have agreed to convert
16   the interviews to audio files that would play on Plaintiff's
17   portable CD player, they certainly were not obligated to do so.
18   Turning over the files in .wav format satisfied their discovery
19   obligations *ab initio*.

20       Therefore, Plaintiff's request for transcription of the
21   audio-recorded interviews is also not well-taken.   If Plaintiff did
22   not originally request that the interviews be produced in a specific
23   format, Defendants may produce the electronically-stored audio files
24   as they have been maintained.   Fed. R. Civ. P. 34(b)(2)(E); <u>see also</u>
25   <u>id.</u>, Advisory Committee Notes to 2006 Amendment, Subdivision (b).
26   As there is no indication that Plaintiff originally requested hard
27   copies of the electronically-stored interviews, the Court will not
28   now compel Defendants to transcribe any interviews <u>specifically for</u>

1   Plaintiff in addition to production of the original audio files
2   themselves.  By all accounts, up to this point, Plaintiff has been
3   satisfied with production of the interviews in electronic format.
4   By his own account, after he could not access the original CD, he
5   was satisfied with production of converted audio files that would
6   allow him to listen to the interviews on a portable CD player.[4]
7   Only recently did he request that Defendants produce transcribed
8   hard copies of the interviews.

9        The foregoing notwithstanding, to the extent that Defendants
10  have in the past made transcripts of any Internal Affairs inter-
11  views, those transcripts are within the broad range of discoverable
12  materials and must be produced if they have not already been
13  produced.   See Fed. R. Civ. P. 34(a)(1)(A).   Defendants are
14  therefore ordered to produce any Internal Affairs interview
15  transcripts, but only to the extent that they currently exist and
16  then only to the extent that any transcripts have not already been
17  produced to date.  To the extent that transcripts do not currently
18  exist, Defendants shall not be compelled to transcribe any inter-
19  views for Plaintiff.  Defendants are not responsible for Plaintiff's
20  inability to access electronic documents that are produced in a
21  common format that makes such files accessible through widely-
22  available computer programs.

23  _____

24  [4]   Because Plaintiff's current request is not for additional converted
          audio files, but for transcribed hard copies of the electronic
25        files, the Court does not address whether Defendants should produce
          converted audio files.  Plaintiff has not presented that issue to
26        the Court.  However, if Plaintiff presents that issue in the future,
          the Court is extremely unlikely to resolve it in his favor because,
          again, he has not brought it to the Court's attention in a timely
27        manner (i.e., in the present motion or previously), and it is simply
          too late to do so given that final pretrial conference is to occur
28        in less than three weeks.  Moreover, the Court would deny the
          request for the additional reason, as set forth herein, that
          Defendants fulfilled their discovery obligations when they produced
          the interviews in the .wav format.

1    Finally, the Court denies Plaintiff's demand that the

2    Internal Affairs witness statements be verified by the witnesses.

3    As the Court understands Plaintiff's demand, he wishes that the

4    original witness verify his or her Internal Affairs statement even

5    if that statement was not originally signed.  However, the produc-

6    tion of documents under Federal Rule of Civil Procedure 34 does not

7    require verification in the same manner that interrogatory responses

8    do.  Compare Fed. R. Civ. P. 33(b)(5) (requiring verification by the

9    actual responding party), with Fed. R. Civ. P. 34 (no verification

10   requirement); see also William W Schwarzer *et al.*, California

11   Practice Guide: Federal Civil Procedure Before Trial § 11:1924 (The

12   Rutter Group 2011) ("Verification not required:  The response need

13   not be signed 'under oath' by the party to whom the request is

14   directed.  However, like all pleadings, the party's attorney must

15   sign it, certifying that it is made in good faith.").  Documents

16   produced under Rule 34 are subject only to the general signature

17   requirement in Federal Rule of Civil Procedure 26(g).  Subject to

18   the exception discussed below, Plaintiff is not entitled to verified

19   responses to document requests in the same manner he is so entitled

20   in the context of interrogatories.

21       The foregoing notwithstanding, if the witness statements were

22   originally signed by the witnesses, Plaintiff is clearly entitled to

23   copies of the signatures as they appear on the original documents.

24   In other words, if the statements were originally signed, those

25   signatures are part of the document itself, which must be produced

26   as it is ordinarily kept in the course of business.  Fed. R. Civ. P.

27   34(b)(2)(E).  Here, however, Defendants have indicated that the

28   witness statements are unsigned audio recordings, not written

1  statements.   Therefore,   since   the   source   audio   files   were   not

2  originally   signed,   the   Court   denies   Plaintiff's   demand   for   a

3  verified response beyond what the Federal Rules of Civil Procedure

4  require.

5  **E.   Production of Documents Referenced In Kluge's Response to
      Special Interrogatory 2**

6

7           Finally,   Plaintiff   points   to   Kluge's   use   of   the   word

8  "material" in his response to special interrogatory and requests

9  that Defendants be compelled to produce documents that this word

10 references.   (Doc.   No.   92-1   at   10.)   As   the   Court   understands

11 Plaintiff's request, "material" refers to those documents enumerated

12 in   Kluge's   response   to   Plaintiff's   request   for   production   of

13 documents   ("RFP")   number   16.   (See   id.   at   ll.   6-10.)   The   Court

14 requested that Defendants state whether the enumerated documents in

15 RFP 16 are also responsive to the word "material," and Defendants

16 responded that they are responsive, (Doc. No. 95 at 2).   The Court

17 also asked whether the enumerated documents have been produced, and

18 Defendants   responded   that   any   documents   that   exist   have   been

19 produced, (id.).   The Court accepts Defendants' representations,

20 which   have   been   signed   as   required   by   Federal   Rule   of   Civil

21 Procedure 11(b), and declines to order any further response.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

08CV1450

## IV.  CONCLUSION

Plaintiff's request is DENIED except as to any Internal Affairs interview transcripts that presently exist and then only to the extent that those transcripts have not been produced to date. The parties shall prepare for the pretrial conference as ordered by Judge Battaglia.  No more cutting bait; it's high time to fish.

IT IS SO ORDERED.

DATED:  April 19, 2011

Hon. William V. Gallo
U.S. Magistrate Judge

08CV1450